# Exhibit 2

Case 8:25-cv-01904-DFM    Document 1-2    Filed 08/27/25    Page 2 of 22   Page ID #:7
Electronically Filed by Superior Court of California, County of Orange, 07/09/2025 04:41:59 PM.
30-2025-01495982-CU-CR-CJC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By J. Garay, Deputy Clerk.

Paul Hoffman #71244
John Washington #315991
Karen Kartun #357230
Schonbrun Seplow Harris Hoffman & Zeldes LLP
200 Pier Ave. Ste. 226
Hermosa Beach, California 90254
Phone: 310-717-7373
Emails: hoffpaul@aol.com; jwashington@sshhzlaw.com;
kkartun@hoffmanwashington.com

Attorneys for Plaintiff

# SUPERIOR COURT OF CALIFORNIA

## FOR THE COUNTY OF ORANGE

Assigned for All Purposes
Judge Thomas S McConville

| | |
|---|---|
| JESSAMYN HUANG,<br><br>Plaintiff,<br><br>vs.<br><br>GARRISON FRADELLA, Officer, Irvine Police Department, MICHAEL KENT, Chief, Irvine Police Department, CITY OF IRVINE, DOES 1-10, inclusive<br><br>Defendants. | Case No. 30-2025-01495982-CU-CR-CJC<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF:**<br><br>(1) **VIOLATION OF CAL CIVIL CODE 52.1**<br>(2) **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br>(3) **NEGLIGENCE**<br>(4) **NEGLIGENT HIRING/EMPLOYMENT**<br>(5) **VIOLATION OF § 42 U.S.C. 1983 (FOURTH AMENDMENT VIOLATION)**<br>(6) **VIOLATION OF § 42 U.S.C. 1983 (MALICIOUS PROSECUTION)**<br>(7) **VIOLATION OF § 42 U.S.C. 1983 (*MONELL LIABILITY*)** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**(8) INJUNCTIVE RELIEF
(CIV. P. § 526A)**


**DEMAND  FOR  JURY  TRIAL**

Jessamyn Huang ("Plaintiff" or "Ms. Huang") hereby makes the following allegations in support of this complaint:

## INTRODUCTION

1.    Jessamyn Huang was in a fifteen-year relationship with Thomas ("Tom") Rusconi, a man with a history of mental health issues, alcoholism, and prior episodes of violence.  The relationship ended in December 2024, but the two remained roommates.  Throughout their relationship, Tom repeatedly threatened to kill Ms. Huang and her loved ones.

2.    Tom stood a foot taller than Ms. Huang and outweighed her by nearly 300 pounds.  Yet, when Ms. Huang called the Irvine Police Department for assistance in a domestic violence situation, it was she who ended up being arrested as the dominant aggressor and charged with felony infliction of corporal injury on a cohabitant.

3.    Although there was insufficient probable cause to arrest Plaintiff, the arresting officer, Garrison Fradella, claimed that under California Penal Code Section 13701 and Irvine Police Department policy, he was required to arrest someone when responding to a domestic violence call or he would lose his job.  This officer's unreasonable arrest, coupled with a policy that results in punishing victims of domestic violence, caused Plaintiff severe emotional distress and threatened her livelihood.

4.    While being held, Plaintiff met other women who had been subjected to the same outrageous policy and arrested as dominant aggressors when they, like Ms. Huang, were only attempting to escape or defend themselves from their abusers.

5.    This case seeks to hold the City of Irvine and its employees liable for their unconstitutional and wrongful actions, both through damages and injunctive relief, so that victims of domestic violence do not continue to be harmed in the same way.

1

**JURISDICTION AND VENUE**

6.      Jurisdiction is proper in this Court because it has general subject matter jurisdiction, and no statutory exceptions to jurisdiction exist.  The Court also has jurisdiction over this matter pursuant to Code Civ. Proc. 526, 526a, and 1060.

7.      Venue is proper, including pursuant to Code of Civ. Proc. 395 because the injury to the person from the wrongful acts described herein occurred in the county of Orange, and is a County in which Defendants reside.

8.      This Court has personal jurisdiction over Defendant CITY because it is a public entity that is either situated in, based in, authorized, or registered to conduct or, in fact, conducts substantial business in the County of Orange, State of California.

9.      This Court has personal jurisdiction over the other Defendants because, on information and belief, they are individuals who reside in the County of Orange.

**PARTIES**

10.     Plaintiff Jessamyn Huang brings this action individually.  Jessamyn Huang was, at all times relevant to this Complaint, and continues to be, a resident of the City of Irvine and the County of Orange.

11.     Jessamyn Huang has paid taxes, including sales tax, to the City of Irvine and the County of Orange within one year of the commencement of this action.

12.     Defendant City of Irvine ("City") is a municipal corporation and public entity duly organized under the laws of the State of California.  The Irvine Police Department ("IPD") is a local government agency of the Defendant City of Irvine. All actions of the IPD are the legal responsibility of the City of Irvine.

13.     Defendant Garrison Fradella is an Irvine Police Department officer. Defendant FRADELLA is the officer who arrested Plaintiff on the night she sought the IPD's protection from her abusive ex-partner.  At all times herein mentioned, Defendant FRADELLA was an employee of the Irvine Police Department and the

2

1  City of Irvine and was, at times, relevant to this action, acting in the course and
2  scope of his employment.

3      14.    Defendant Michael Kent is the Chief of the Irvine Police Department
4  and a policymaker for the Police Department. Defendant KENT is sued in his
5  official capacity, and in order to obtain the injunctive relief requested as set forth
6  below.

7      15.    Plaintiff is informed and believes and thereon alleges that, at all
8  relevant times, Defendants DOES 1-10 were employees or officials of Defendant
9  City, a municipality of the State of California, and several were Irvine Police
10 Department officers or personnel.  Plaintiff is ignorant of the true identities and
11 capacities of Defendants DOES 1-10 and, for that reason, sues those defendants by
12 such fictitious names.  Plaintiff is informed and believes and thereon alleges that
13 each of the fictitiously named Defendants is liable in some manner and to some
14 extent for the injuries alleged in this Complaint.  Plaintiff will seek leave to amend
15 this Complaint to allege the true identities and capacities of these fictitiously named
16 Defendants when they are ascertained.

17     16.    All Defendants, at all times relevant to the allegations herein, acted
18 under the color of state law and within the scope of their employment.

19     17.    In committing the acts alleged in this Complaint, the individual
20 Defendants acted knowingly, maliciously, and with reckless or callous disregard for
21 Ms. Huang's constitutional and other rights, justifying an award of punitive
22 damages against each individual Defendant.

23     18.    Defendant CITY is vicariously liable under Government Code Section
24 815.2 for Plaintiff's state law claims as the acts described herein were acts and
25 omissions of Defendant's employees committed within the scope of their
26 employment.

27                    **STATEMENT OF FACTS**

28     19.    Jessamyn Huang, a highly respected digital communications manager

3

1  for a trade policy think tank, acclaimed author of children's books, and a former
2  three-time recruit for the CIA's clandestine service, was in a fifteen-year, on-again,
3  off-again relationship with Tom Rusconi, which ended in December 2024.
4  However, due to Tom's financial circumstances, Tom continued to live with
5  Plaintiff in her apartment, with a planned move-out date of March 2025.

6      20.     Tom had a history of mental health issues, alcoholism, and prior
7  incidents of physical and emotional domestic abuse.  In 2018, Plaintiff called the
8  Sacramento police regarding an incident in which Tom shoved Plaintiff against a
9  wall, punched her above the left breast, and left a bruise on Plaintiff that was
10 documented in photographs.  Plaintiff did not press charges because Tom had
11 moved out of the apartment they shared at the time, but did ask police to document
12 the violence.  Throughout their turbulent relationship, Tom repeatedly threatened to
13 kill Plaintiff and her family.

14     21.     On February 15, 2025, Plaintiff was distraught regarding several recent
15 traumatic events, including the end of a different romantic relationship.  She told
16 Tom she needed the keys to their vehicle so she could drive her recent ex-boyfriend
17 to the airport the next morning.  Tom's name was on the title for the car, but
18 Plaintiff paid the insurance, and the car was considered shared.  Tom, who was
19 intoxicated, became belligerent at the request and called Plaintiff names. Plaintiff
20 put on her headphones to drown out the barrage against her, but this only further
21 enraged Tom. Just as he had done repeatedly in the past, Tom grabbed a kitchen
22 knife, shoved it at Plaintiff, and told her to stab him in the heart with it. Then, he
23 pointed the knife at Plaintiff and told her to "sleep tight tonight."  Tom told her he
24 was going to kill her, her ex-boyfriend, her parents, her brother, her sister-in-law,
25 and two nieces.  Tom shoved Plaintiff against the apartment radiator, tightly held
26 her arms, and swung at her face. Plaintiff managed to wriggle free.  Wanting only to
27 obtain the car keys and remove herself from the situation, Plaintiff reached for the
28 keys Tom held, but Tom taunted her by holding the car keys over her head.  She

1    could not reach the keys because Tom, nearly a foot taller than Plaintiff, towered

2    over her.  She jumped up, trying to grab them and knocked Tom's glasses from his

3    face, and they broke. Tom threw the open beer can he held in his other hand at

4    Plaintiff's face, hitting her on the right temple and drenching her hair in beer.

5         22.       At that point, Plaintiff called the non-emergency IPD phone number

6    and reported that Tom had threatened to kill her.  Tom scrambled off to his room

7    and shut the door.  IPD records noted the time of the call as 12:20 a.m. on February

8    16, 2025.

9         23.       Plaintiff was waiting outside her apartment when the IPD officers

10   arrived, including Officers M. He, J. Le, H. Gallegos, and Sergeant J. Do.  Only two

11   officers spoke to Plaintiff about the incident, including the arresting officer,

12   Garrison Fradella.  The officer asked if she had been drinking because Plaintiff's

13   hair smelled like beer. She told him no and that she does not drink alcohol.  She

14   showed the officers a scratch on her back, and the officer photographed it.  Having

15   been so traumatized by the recent events culminating in Tom's verbal and physical

16   attack that evening, she could not recall in the moment how the injury occurred.

17   She was kept outside while the officers went in to speak with Tom. Officer Gallegos

18   photographed Tom and his reported injuries, which included a less than one-inch cut

19   on his right middle finger.  No explanation of how Tom sustained that injury was

20   requested by the officer or provided by Tom.  Officer Fradella deemed the small cut

21   on Tom's finger, Tom's tearfulness, and his bold assertion that he had to struggle to

22   break free from the attack of a woman a foot shorter and 300 pounds lighter than he

23   was as a sufficient basis to arrest Plaintiff as the "dominant aggressor."

24        24.       After speaking with Tom, the officers returned, searched Plaintiff for

25   weapons, and handcuffed her hands behind her back.  Officer Fradella told her she

26   was being arrested based on his quick assessment that she was the dominant

27   aggressor.  Officer Fradella claimed that under California Penal Code Section 13701

28   and Irvine Police Department policy, he was required to arrest someone when

5

1  responding to a domestic violence call or he would lose his job.  Officer Fradella
2  provided no further information except to state that he had provided Tom with
3  mental health resources.  Plaintiff was not told what Tom had said nor given the
4  opportunity to contradict Tom's version of events.

5      25.      In the police report, Fradella admits that Plaintiff was the victim of
6  verbal abuse and possibly the victim of misdemeanor domestic battery under Penal
7  Code 243(e)(1) but claimed he was unable to substantiate her allegations due to a
8  lack of evidence even though Fradella had photographic evidence of the scratch on
9  Plaintiff's back and the bruises on her arms.

10     26.      The time of arrest was documented as 12:58 a.m., less than forty
11 minutes from the time Plaintiff called for help.

12     27.      Fradella arrested Plaintiff for infliction of corporal injury on a
13 cohabitant, a felony, per California Penal Code 273.5(a).  The charge largely
14 stemmed from the small cut Tom had on his finger, but Plaintiff was not
15 informed that Tom had a cut until after she was already being processed at
16 the Irvine custody facility.  Officer Fradella never questioned Plaintiff about
17 Tom's injury prior to arresting her.

18     28.      While being processed at the Irvine custody facility, an officer
19 gave Plaintiff a copy of the protective order Tom received at the time
20 Plaintiff was arrested.  Fradella had incorrectly stated the time of the arrest
21 on the order as 1:20 a.m.  The officer recognized the error and had to correct
22 the form to rectify Fradella's carelessness before giving the final copy to
23 Plaintiff.

24     29.      While in custody, Plaintiff filed a complaint against Officer
25 Fradella for failing to conduct a thorough investigation.  Fradella came to
26 see Plaintiff at the Irvine Detention Facility but warned her that if he had to
27 retake her statement regarding the events and her injuries, it would take
28 longer to get her processed and released.  Unswayed, Plaintiff explained she

1  did not cause the cut to Tom's finger and that he likely did it to himself
2  while playing with the knife, as he had done in the past.  Plaintiff showed
3  Fradella the defined marks on her arms where Tom grabbed her.  Without
4  providing an explanation, Fradella "determined the marks were inconsistent
5  with grab marks" and claimed he could not tell if they were related to
6  Plaintiff's earlier altercation with Tom. Fradella dismissed the long vertical
7  scratch on Plaintiff's back as coming from a "cat's claw," and denied that it
8  occurred during the earlier struggle because he did not believe it could have
9  happened from being slammed against a wall, even after Plaintiff explained
10 that she had been pushed against a radiator on that wall.  However, later, in
11 his report, Fradella admitted that the scratch could be consistent with
12 Plaintiff having been shoved up against the radiator.  After spending an hour
13 and four minutes with Plaintiff, Fradella concluded there was no new
14 evidence, and he declined to alter his initial arrest decision or the filing
15 charge.  Plaintiff was then transported to Orange County Jail.

16      30.     While in custody and since her release, Plaintiff was made
17 aware of multiple other women who had been similarly misidentified and
18 arrested by Irvine police officers as dominant aggressors when they were
19 instead victims of domestic abuse.

20      31.     Plaintiff's bond was set at $50,000.  Before Plaintiff was
21 released, she suffered humiliation and severe emotional and financial stress
22 by going through a required mental health screening and having to pay a bail
23 bondsman $5,000.

24      32.     Plaintiff had to hire a criminal defense attorney, resulting in
25 another $10,000 in fees.  The charges against Plaintiff were dropped within
26 days due to insufficient evidence.  However, the arrest remains on her record
27 as a detention.  It will be a year before Plaintiff can have her record
28 completely expunged, which is causing her continued emotional distress.

7

33.     In the aftermath of the arrest, Plaintiff experienced agoraphobia
and needed to see her therapist every day for two and a half weeks.  She was
so traumatized that she had difficulty functioning at work and was told by
her boss that if her work performance did not improve, she was at risk of
losing her job.  Plaintiff's other obligations suffered as well.  She missed the
deadlines for submitting books to two of her publishers, risking reputational
harm from the delay.  Similarly, Plaintiff feared the nature of the charges
had the potential to negatively impact her long-term earning potential as a
children's book author and could hinder her ability to have adaptations of
her projects made by media companies like Netflix.

34.     At the time of the arrest, Officer Fradella told Plaintiff he was
required to arrest someone or face losing his job.  This claim was based on
Cal. Gov. Code § 13701, which was enacted in 1986 and states in part:

(a) Every law enforcement agency in this state shall develop,
adopt, and implement written policies and standards for
officers' responses to domestic violence calls by January 1,
1986. These policies shall reflect that domestic violence is
alleged criminal conduct. Further, they shall reflect existing
policy that a request for assistance in a situation involving
domestic violence is the same as any other request for
assistance where violence has occurred.

(b) The written policies shall encourage the arrest of domestic
violence offenders if there is probable cause that an offense
has been committed. These policies also shall require the
arrest of an offender, absent exigent circumstances, if there is
probable cause that a protective order … has been violated.
These policies shall discourage, when appropriate, but not
prohibit, dual arrests. Peace officers shall make reasonable
efforts to identify the dominant aggressor in any incident. The
dominant aggressor is the person determined to be the most
significant, rather than the first, aggressor. In identifying the
dominant aggressor, an officer shall consider the intent of the

8

law to protect victims of domestic violence from continuing abuse, the threats creating fear of physical injury, the history of domestic violence between the persons involved, and whether either person acted in self-defense.

35.     Arrest laws in domestic violence cases are not standardized from state to state.  Across the nation, domestic violence statutes may be either mandatory arrest, preferred arrest, or discretionary arrest.[1]  The California statute has a preferred arrest provision, meaning arrest is encouraged but not statutorily required unless the abuser is in violation of a protective order.  A responding officer must have probable cause for the arrest and is tasked with identifying the dominant aggressor in an effort to avoid dual arrests.

36.     Although California is a preferred arrest, not a mandatory arrest, state, Officer Fradella told Plaintiff that an arrest was mandatory and then deemed Plaintiff the dominant aggressor.

37.      POST guidelines on domestic violence note that the dominant aggressor is the most significant aggressor, not necessarily the first.  The guidelines mimic the statute's language regarding what the arresting officer must consider in making the determination.[2]

38.     Misunderstanding the concept of the dominant aggressor in domestic violence cases can cause misidentification of victims as perpetrators.  Officers who focus solely on who started an altercation, the emotional response of the victim, or injuries, rather than on the overall history and ongoing threat, are more likely to misidentify the dominant aggressor.  Officer Fradella focused on Plaintiff's "matter-

---

[1] David Hirschel, Domestic Violence Cases: What Research Shows About Arrest and Dual Arrest Rates, NAT'L INST. OF JUSTICE (July 25, 2008), https://www.ncjrs.gov/pdffiles1/nij/222679.pdf. [https://perma.cc/L4S9-X7Y8]

[2] Domestic violence guidelines, CALIFORNIA COMMISSION ON POST (2022), https://post.ca.gov/Portals/0/post_docs/publications/Domestic_Violence.pdf (last visited Apr 23, 2025).

1  of-fact way" of speaking and "mostly calm appearance" as evidence Plaintiff was
2  not the victim.  Likewise, Fradella assumed. Tom was the victim because he was
3  "uncontrollably sobbing."  In reaching his conclusions, Fradella ignored Tom's
4  history of emotionally and physically abusing Plaintiff and the pronounced
5  discrepancy between Tom's and Plaintiff's physical sizes.

6      39.      Cause to arrest a person requires that officers consider multiple factors,
7  such as self-defense and the history of abuse, to reduce identification errors.  Still,
8  the effectiveness of these measures depends on the training and judgment of
9  individual officers.  Because identifying the dominant aggressor "can be difficult
10  and nuanced," officers should have "intensive training" in making these
11  assessments.[3]

12      40.      Inadequate training and improper IPD policies caused Officer Fradella
13  and other IPD officers to misidentify Plaintiff as the dominant aggressor and
14  misstate the law as requiring an arrest.  Because of these failures, Plaintiff suffered
15  remarkably harmful legal, financial, and social impacts.

16          **FIRST CLAIM FOR RELIEF**
17          **BANE ACT, CAL. CIVIL CODE §52.1**
18          **(AGAINST DEFENDANT FRADELLA)**

19      41.      Plaintiff hereby incorporates by reference the foregoing paragraphs as
20  if set forth in full herein.

21      42.      The acts by Defendant violate the federal and state constitutional and
22  statutory rights of Plaintiff, including as guaranteed by the Fourteenth Amendment
23  to the U.S. Constitution and by the California Constitution Article I, sections 1, 7,
24  and 13.  Defendants used force, intimidation, coercion, and/or the threat of force,
25  intimidation, and coercion directed toward Plaintiff. Defendant deprived Plaintiff of

26  ─────────────────
27  [3] David Hirschel and Philip McCormack, *What Do Primary Aggressor Laws Achieve? A 10-Year National Study of Their Efficacy*, 24(2) Domestic Violence Report, 25 (2019). doi:https://www.civicresearchinstitute.com/online/PDF/DVR%202402-04-Aggressor.pdf.
28

1  her right to be free from unreasonable seizure and acted with deliberate indifference
2  in committing the acts herein.

3      43.      Defendant violated Plaintiff's rights under U.S. and California law,
4  inter alia, by arresting Plaintiff without probable cause.

5      44.      In committing the acts alleged herein, Defendants acted maliciously,
6  wantonly, and oppressively, with specific intent and in reckless disregard of
7  Plaintiff's rights.

8      45.      Defendant CITY is vicariously liable under Government Code Section
9  815.2 as the acts described herein were acts and omissions of Defendant's
10 employees committed within the scope of their employment.

11     46.      Plaintiff filed a tort claim against Defendant CITY on May 19, 2025.
12 Defendant CITY rejected the claim on June 9, 2025.

13     47.      As a direct and legal result of the acts and omissions of Defendants,
14 Ms. Huang has suffered fear, anxiety, torment, and emotional distress.

15     48.      As a direct and proximate consequence of Defendants' actions, Plaintiff
16 suffered emotional injury, which affected her ability to work.  She is entitled to all
17 available damages for each of these injuries, including punitive damages against the
18 individual Defendants and attorney's fees as permitted by law.

19                        **SECOND CLAIM FOR RELIEF**
20            **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
21            **(AGAINST DEFENDANT FRADELLA AND DOE DEFENDANTS)**

22     49.      Plaintiff hereby incorporates by reference the foregoing paragraphs as
23 if set forth herein in full.

24     50.      In their acts and omissions described herein, Defendants intended and
25 acted with reckless disregard to the probability that Plaintiff would suffer emotional
26 distress from the conduct.

27     51.      Defendants' conduct alleged herein was outrageous and beyond the
28 bounds of what is normally acceptable.

11

52.     In engaging in the conduct described herein, Defendants engaged in conduct with malice, oppression, and fraud so as to justify punitive damages against the individual Defendant.

53.     As a direct and proximate consequence of Defendant's actions, Plaintiff suffered significant emotional and psychological distress and limitations on her ability to work. She is entitled to all available damages for each of these injuries, including punitive damages against the individual Defendants and attorney's fees as permitted by law.

54.     Defendant CITY is vicariously liable under Government Code Section 815.2 as the acts described herein were acts and omissions of Defendant's employees committed within the scope of their employment.

## THIRD CLAIM FOR RELIEF
## NEGLIGENCE
### (AGAINST ALL DEFENDANTS)

55.     Plaintiff hereby incorporates by reference the foregoing paragraphs as if set forth herein in full.

56.     Defendants had a duty to use reasonable care to prevent harm to Plaintiff and a special duty to her given the fact that she was a victim of domestic violence who relied on their actions and inactions to protect her from known and foreseeable harm.

57.     Defendants were aware that their actions and omissions described above could result in significant injury to Plaintiff, including emotional trauma and reputational harm that could affect her ability to obtain work.  Defendants nonetheless unreasonably disregarded the risks to Plaintiff.

58.     In doing the acts described herein, Defendants breached their duties of care to Plaintiff.  Defendants negligently subjected Ms. Huang to injury, harm, and damage, including negligently inflicting emotional distress.

59.     In engaging in the conduct described herein, Defendants acted with

12

1  malice, oppression, and fraud so as to justify punitive damages against each

2  individual Defendant.

3      60.    As a direct and proximate consequence of Defendant's actions, Plaintiff

4  suffered anxiety, worry, mental anguish, and emotional distress, and she is entitled

5  to compensatory damages for the injury to her person.  The individual Defendants

6  are responsible for all damages suffered by Ms. Huang, including compensatory and

7  punitive damages.

8      61.    Defendant CITY is vicariously liable under Government Code Section

9  815.2 as the acts described herein were acts and omissions of Defendant's

10  employees committed within the scope of their employment.  Defendant City is also

11  directly liable for its negligence in failing to adequately train those responsible for

12  Plaintiff's injuries and for fostering customs and practices that were responsible for

13  Plaintiff's injuries.

14  **FOURTH CLAIM FOR RELIEF**

15  **NEGLIGENT EMPLOYMENT AND SUPERVISION**

16  **(AGAINST DEFENDANT CITY)**

17      62.    Plaintiff hereby incorporates by reference the foregoing paragraphs as

18  if set forth herein in full.

19      63.    Defendant CITY hired the individual Defendants.

20      64.    Defendant CITY, including by and through its employees, as

21  supervisors of individual Defendants herein, knew or, in the exercise of due care,

22  should have known that these Defendants had not been trained properly in

23  responding to domestic violence calls, determining the dominant aggressor in each

24  incident, understanding the statutory requirements under Section 13701, and

25  whether probable cause for an arrest is present.

26      65.    Defendant CITY, including by and through its employees, as

27  supervisors of individual Defendants herein, knew or, in the exercise of due care,

28  should have known that this unfitness or incompetence created a particular risk to

13

1    persons like Plaintiff.

2    66.    The City's negligence in hiring, supervising, or retaining the individual

3    Defendants was a substantial factor in causing Plaintiff's harm.

4    67.    Defendant CITY is vicariously liable under Government Code Section

5    815.2 as the acts described herein were acts and omissions of Defendant's

6    employees committed within the scope of their employment.

7    **FIFTH CLAIM FOR RELIEF**

8    **VIOLATION OF THE FOURTH AMENDMENT**

9    **(42 U.S.C. § 1983)**

10    **(AGAINST DEFENDANT FRADELLA)**

11    68.    Plaintiff realleges and incorporates by reference the allegations above

12    as if fully set forth herein.

13    69.    At the time of Plaintiff's arrest on February 16, 2025, Plaintiff was a

14    United States citizen.  As such, she was a person to whom the Fourth Amendment

15    applied.

16    70.    Defendant FRADELLA arrested Plaintiff without justification in

17    violation of the Fourth Amendment.

18    71.    Defendant's actions were objectively unreasonable and served no

19    legitimate governmental interest.  In engaging in the conduct identified above,

20    Defendant did not take reasonable available measures to prevent or reduce the risk

21    of serious harm, even though a reasonable person in the same or similar

22    circumstances would have understood the high degree of risk involved.

23    72.    At all times relevant to this lawsuit, Defendant acted under color of

24    state law and in the course, scope, and performance of his duties.

25    73.    In engaging in the conduct described herein, Defendant acted with

26    malice, oppression, wantonness, and fraud so as to justify punitive damages against

27    Defendant.

28    74.    As a direct and proximate consequence of Defendant's actions, Plaintiff

14

1  suffered anxiety, worry, mental anguish, emotional distress, and limitations on her
2  ability to work.  She is entitled to all available damages for each of these injuries,
3  including punitive damages against the Defendant and attorney's fees as permitted
4  under 42 U.S.C. § 1988 and as otherwise permitted by law.

5                          **SIXTH CLAIM FOR RELIEF**
6                          **MALICIOUS PROSECUTION**
7                            **(42 U.S.C. § 1983)**
8        **(AGAINST DEFENDANT FRADELLA AND DOE DEFENDANTS)**

9        75.    Plaintiff hereby incorporates by reference the foregoing paragraphs as
10  if set forth herein in full.

11       76.    In initiating the action against Plaintiff, Defendant Fradella ignored
12  evidence that Thomas Rusconi was the dominant aggressor in the situation and
13  instead made the decision to arrest Plaintiff without probable cause.  Defendant
14  Fradella failed to attribute to Tom Plaintiff's scratches, bruises, and grab marks, but
15  readily attributed to Plaintiff the small cut on one of Tom's fingers without ever
16  asking Plaintiff about it.

17       77.    The arrest and charges against Plaintiff were brought with malice as
18  Defendant deliberately misused the legal system by arresting Plaintiff based on the
19  ulterior motive of his own job security, as Defendant claimed he had to arrest
20  someone or risk losing his job.

21       78.    All charges against Plaintiff were dropped due to the insufficiency of
22  the evidence.

23       79.    As a direct and proximate consequence of Defendant's actions, Plaintiff
24  suffered anxiety, worry, mental anguish, emotional distress, and limitations on her
25  ability to work. She is entitled to all available damages for each of these injuries,
26  including punitive damages against the Defendant and attorney's fees as permitted
27  under 42 U.S.C. § 1988 and as otherwise permitted by law.

28

## SEVENTH CLAIM FOR RELIEF

## VIOLATION OF THE FOURTH AMENDMENT

## (42 U.S.C. § 1983)

### (AGAINST DEFENDANT CITY)

80.    Plaintiff realleges and incorporates by reference the allegations above as if fully set forth herein.

81.    It was the City's responsibility to have proper policies and appropriately train its police officers in the appropriate response to domestic violence calls, determination of the dominant aggressor, when an arrest is mandatory, and whether probable cause is present.

82.    Defendant CITY was well aware of the risk from unlawful seizure and false arrest to Plaintiff's emotional, social, and financial well-being and was deliberately indifferent to it.

83.    The City was aware that intensive training and education were required to avoid a substantial likelihood of unreasonable seizure of victims in domestic violence situations.

84.    The City was aware that its practices were deficient.

85.    There is a widespread custom, policy, and practice in the City of inadequately training police officers regarding domestic violence response, which has predictably resulted in the arrest without probable cause of victims of abuse like Plaintiff.  On information and belief, the City is well aware of such incidents and the likelihood that they could recur.  Furthermore, the City has failed to take adequate measures to correct, retrain, or discipline police officers who have engaged in such conduct and, on information and belief, has ratified their actions.

86.    Based upon the principles set forth in *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), Defendant City is liable for Plaintiff's injuries as set forth herein.

16

## EIGHTH CLAIM FOR RELIEF

## INJUNCTIVE RELIEF

## (Code of Civil Procedure 526a)

### (AGAINST DEFENDANT GRADELLA, DEFENDANT KENT, DOE DEFENDANTS, AND CITY)

87.    Plaintiff realleges and incorporates by reference the allegations above as if fully set forth herein.

88.    Plaintiff's harms occurred as a result of the CITY and DOE defendants, currently unknown, tacitly authorizing and permitting the acts complained of and failing to take corrective measures to prevent them from happening.  The CITY does not ensure that its police officers are adequately trained to respond appropriately to domestic violence calls.

89.    The City's policies and practices in arresting victims of domestic abuse without probable cause in cases that are ultimately dropped due to lack of evidence are negligent, illegal, and wasteful of the City's resources and in the resources and time spent processing, housing, and prosecuting victims.  The practice complained of violates the United States and California Constitutions.

90.    Plaintiff brings this suit to enjoin the ongoing practice by and through the City's police officers of arresting victims of domestic abuse without probable cause and properly retraining and disciplining officers who arrest victims rather than their abusers after inadequate assessments.

91.    In the year preceding the commencement of this action, Plaintiff has paid tax, including sales taxes, to the City of Irvine and County of Orange, where she lives.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests relief as follows:

1.    The award of general and compensatory damages against all Defendants, jointly and severally, in an amount according to proof at trial;

2. Injunctive relief as set forth above;

3. The award of punitive and exemplary damages against all Defendants sued in their individual capacities in an amount to be proven at trial;

4. The award of any and all other damages allowed by law according to proof to be determined at time of trial in this matter;

5. The award of costs of suit and reasonable attorneys' fees permitted under California Code of Civil Procedure §1021.5, California Civil Code §52.1, 42 U.S.C. § 1988.

6. The award of such other relief as the court deems just and proper.

Dated: July 9, 2025

SCHONBRUN SEPLOW HARRIS & HOFFMAN LLP


By: /s/ Karen Kartun
     Paul Hoffman
     John Washington
     Karen Kartun
     *Attorneys for Plaintiff,*
     *Jessamyn Huang*

## DEMAND FOR JURY TRIAL

Plaintiff hereby respectfully demands that a trial by jury be conducted with respect to all issues presented herein.

Dated: July 9, 2025

SCHONBRUN SEPLOW HARRIS
HOFFMAN & ZELDES LLP

By:  /s/ Karen Kartun
       Paul Hoffman
       John C. Washington
       Karen Kartun
       *Attorneys for Plaintiff,*
       *Jessamyn Huang*