1  Paul Hoffman, SBN 071244
   John C. Washington, SBN 315991
2  Karen Kartun, SBN 357230
   SCHONBRUN SEPLOW
3  HARRIS HOFFMAN & ZELDES LLP
   200 Pier Avenue #226
4  Hermosa Beach, California 90254
   Telephone: (310) 717-7373
5  Fax: (310) 399-7040

6  Attorneys for Plaintiff

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10 | Jessamyn Huang,                    | Case No. 8:25-cv-01904-DFM
11 |        Plaintiff,                   | Judge: Douglas F. McCormick
12 |    v.                               |
13 | GARRISON FRADELLA, Officer,         | **PLAINTIFF'S OPPOSITION TO
   | Irvine Police Department; MICHAEL   | DEFENDANTS' 12 (b)(6) MOTION
14 | KENT, Chief, Irvine Police          | TO DISMISS**
   | Department; CITY OF IRVINE; and     |
15 | DOES 1-10,inclusive                 |
16 |        Defendants.                  | Date:  November 4, 2025
17 |                                     | Time: 10:00 a.m.
   |                                     | Courtroom 6B
18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................2

TABLE OF AUTHORITIES .........................................................................4

INTRODUCTION ........................................................................................9

STATEMENT OF FACTS ...........................................................................9

LEGAL STANDARD.................................................................................13

ARGUMENT .............................................................................................14

I.    THE BANE ACT CLAIM (CAL. CIV. CODE § 52.1) IS PLAUSIBLY ALLEGED; "INDEPENDENT COERCION" IS NOT A REQUIRED ELEMENT.14

II.   PLAINTIFF PLAUSIBLY ALLEGES A FOURTH AMENDMENT ARREST WITHOUT PROBABLE CAUSE...............................................................17

III.  DISMISSAL ON QUALIFIED IMMUNITY GROUNDS AT THE PLEADING STAGE IS DISFAVORED, BUT REGARDLESS PLAINTIFF'S FEDERAL CLAIMS ARE NOT BARRED BY QUALIFIED IMMUNITY............19

IV.   State Tort Claims Are Adequately Pleaded .....................................23

  A.   IIED.........................................................................................23

  B.   Negligence...............................................................................24

V.    PLAINTIFF HAS PLAUSIBLY ALLEGED A NEGLIGENT EMPLOYMENT AND SUPERVISION CLAIM, AND *MONELL* LIABILITY. ................................26

  A.   Negligent Training and Supervision .......................................26

  B.   *Monell* Liability.......................................................................28

VI.   THE CAL. CODE CIV. PROC. § 526a CLAIM SHOULD BE DISMISSED WITHOUT PREJUDICE BECAUSE ARTICLE III BARS IT IN FEDERAL

1

COURT AND PLAINTIFF DOES NOT OPPOSE DISMISSAL WITHOUT

PREJUDICE OF THE MALICIOUS PROSECUTION CLAIM................................29

CONCLUSION............................................................................................................30

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff's Opposition to Defendants' 12 (b)(6) Motion to Dismiss

1

## **TABLE OF AUTHORITIES**

2

## **CASES**

3   *AE v. Cty. of Tulare,*

4   *666 F.3d 631 (9th Cir. 2012)*……………………………………………………28

5   *Arpin v. Santa Clara Valley Transp. Agency,*

6   *261 F.3d 912 (9th Cir. 2001)*……………………………………………………20

7   *Bell Atl. Corp. v. Twombly,*

8   550 U.S. 544 (2007)……………………………………………….………13

9   *Bender v. Cty. of L.A.,*

10   217 Cal. App. 4th 968 (2013)……………………………………………...14

11   *Borunda v. Richmond,*

12   885 F.2d 1384 (9th Cir. 1988)……………………………………...……………17

13   *Brown v. Ransweiler,*

14   171 Cal. App. 4th 516 (2009)……………………………………...……………24

15   *Buckheit v. Dennis,*

16   713 F. Supp. 2d 910 (N.D. Cal. 2010)……………………………...………16

17   *Caldwell v Montoya,*

18   10 Cal. 4th 972 (1995)…………………………………………...………25

19   *Cantrell v. City of Long Beach,*

20   241 F.3d 674 (9th Cir. 2001)……………………………………………………30

21   *Chinaryan v. City of L.A.,*

22   113 F.4th 888 (9th Cir. 2024)……………………………………….………16

23   *Christensen v. Superior Court,*

24   54 Cal. 3d 868 (1991)……………………………………………...………22

25   *City of St. Louis v. Praprotnik,*

26   485 U.S. 112 (1988)…………………………………………….………27

27

28

4

1  *Cornell v. City & Cty. of S.F.,*

2  17 Cal. App. 5th 766 (2017)…………………………..………………13, 14

3  *Cousins v. Lockyer*,

4  568 F.3d 1063 (9th Cir. 2009)…………………….…..………………………15

5  *de Villers v. Cty. of San Diego*,

6  156 Cal. App. 4th 238 (2007)………………………….…………………..26

7  *Frudden v. Pilling*,

8  877 F.3d 821 (9th Cir. 2017)……………………………………………18

9  *Fuller v. M.G. Jewelry*,

10  950 F.2d 1437 (9th Cir. 1991)………………………………………20

11  *Gasho v. United States*,

12  39 F.3d 1420 (9th Cir. 1994)………………………...…………….20

13  *Groten v. California*,

14  251 F.3d 844 (9th Cir. 2001)…………………………...………18, 19

15  *Hernandez v. City of Napa*,

16  781 F. Supp. 2d 975 (N.D. Cal. 2011)……………………………17, 18

17  *Hernandez v. City of San Jose*,

18  241 F. Supp. 3d 959 (N.D. Cal. 2017)…………………………..19

19  *Hopkins v. Bonvicino*,

20  573 F.3d 752 (9th Cir. 2009)………………………………..…..20

21  *Johnson v. Hawe*,

22  388 F.3d 676 (9th Cir. 2004)………………………….………..28

23  *Khoja v. Orexigen Therapeutics, Inc.*

24   1003 F.3d 988 (9th Cir. 2018)…………………………………….13

25  *Koussaya v. City of Stockton*,

26  54 Cal. App. 5th 909 (2020)……………………….…………..26

27

28

Plaintiff's Opposition to Defendants' 12 (b)(6) Motion to Dismiss

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Lee v. City of L.A.,*

250 F.3d 668 (9th Cir. 2001)……………………………..…………………..13

*Long v. Cty. of L.A.,*

442 F.3d 1178 (9th Cir. 2006)……………………………………………..28

*Lum v County of San Joaquin,*

756 F. Supp. 2d 1243 (E.D. Cal. 2010)………………………………………24

*Lyall v. City of Los Angeles,*

807 F.3d 1178 (9th Cir. 2015)……………………………………...………14

*Malibu Textiles, Inc. v. Label Lane Int'l, Inc.,*

922 F.3d 946 (9th Cir. 2019)……………………………………………………13

*Martinez v. City of L.A.,*

141 F.3d 1373 (9th Cir. 1998)……………………………………………..25

*McDonald v. Cty. of Sonoma,*

506 F. Supp. 3d 969 (N.D. Cal. 2020)…………………………………….…22

*McKenna v. Permanente Med. Grp., Inc*

894 F. Supp. 2d 1258 (E.D. Cal. 2012) .,……………………………..…...23

*Monell v. Dep't of Soc. Servs.,*

436 U.S. 658 (1978)…………………………………………...………26, 28

*O'Brien v. Welty,*

818 F.3d 920 (9th Cir. 2016)………………………………...…………….19

*Orin v. Barclay,*

272 F.3d 1207 (9th Cir. 2001)………………………………...…………24

*Peng v. Hu,*

335 F.3d 970 (9th Cir. 2003)………………………………...………..20

*Perez v. City of Huntington Park,*

7 Cal. App. 4th 817 (1992)……………………………………...…………27

Plaintiff's Opposition to Defendants' 12 (b)(6) Motion to Dismiss

*Reed v. Lieurance*,

863 F.3d 1196 (9th Cir. 2017)…………………..…………………….……..19

*Reese v. Cty. of Sacramento*,

888 F.3d 1030 (9th Cir. 2018)…………………………..………13, 14, 17

*Rosebrock v. Perez*,

No. CV 17-4354 DSF (ASx),

2018 U.S. Dist. LEXIS 239661 (C.D. Cal. Feb. 7, 2018)………..……..…..……19

*Rosenbaum v. Washoe Cty.*,

663 F.3d 1071 (9th Cir. 2011)……………………………………....……...19

*Schild v. Rubin*,

232 Cal.App.3d 755 (1991)……………………………………..…..…..……23

*Shoyoye v. Cty. of L.A.*,

203 Cal. App. 4th 947 (2012)…………………………....…..…..15

*Sialoi v. City of San Diego*,

823 F.3d 1223 (9th Cir. 2016)……………………………………..……19, 20

*Smith v. Giovannini*,

No. 2:15-cv-1410 DB PS, 2018 U.S. Dist. LEXIS 144617

(E.D. Cal. Aug. 23, 2018)………………………………………….……18, 19

*Starr v. Baca*,

652 F.3d 1202 (9th Cir. 2011)…………………………………....……..…28

*Thomas v. Dillard*,

212 F. Supp. 3d 938 (S.D. Cal. 2016) …………………………....………14

*United States v. Ortiz-Hernandez*,

427 F.3d 567 (9th Cir. 2005)…………………………………....……..……..20

*Venegas v. County of Los Angeles*,

153 Cal. App.4th 1230 (2007)…………………………………………....…16

Plaintiff's Opposition to Defendants' 12 (b)(6) Motion to Dismiss

1  *Venegas v. Cty. of L.A.*,

2  32 Cal.4th 820 (2004)…………………………..……………………………13

3  *Wallis ex rel. Wallis v. Spencer*,

4  202 F.3d 1126 (9th Cir. 1999)……………………………………………..27

5  *Williams v. Gerber Prod. Co.*,

6  552 F.3d 934 (9th Cir. 2008)……………………………….………….…13

7  *Williams v. State of California*,

8  34 Cal. 3d 18 (1983)………………………………………………………25

9  *Wynes v. Kaiser Permanente Hosps.*,

10  936 F. Supp. 2d 1171 (E.D. Cal. 2013)……………………………..…..22

11  *Zelig v. Cty of L.A.*,

12  27 Cal. 4th 1112 (2002)……………………………….…………….…..24

13

14

15                          **STATUTES**

16  42 U.S.C. § 1983……………………………….……16, 28, 29

17  Cal. Code Civ. Proc. § 526a……………………………...………..29

18  Cal. Civ. Code § 52.1…………………………………………….8

19  Cal. Gov't Code § 815.2………………………………………..26

20  Cal. Gov't Code 815.6………………………………………..26

21  Cal. Gov't Code § 820.4……………………………………...25

22  Cal. Gov. Code § 13701…………………………………...11

23  California Penal Code 243(e)(1)…………………………………10

24  California Penal Code 273.5(a)………………………………..10, 16

25  Cal. Pen Code § 836 (d)(1)…………………………………...24

26  California Penal Code Section 13701………………………...10, 27, 29

27

28

Plaintiff's Opposition to Defendants' 12 (b)(6) Motion to Dismiss

1

### INTRODUCTION

2       Officer Fradella arrested Ms. Huang without probable cause after falsely

3 identifying her as the dominant aggressor during a domestic-violence incident despite

4 readily available exculpatory evidence and in contravention of California's statutory

5 "dominant aggressor" framework.  Ms. Huang has alleged facts sufficient to support

6 her claims under the Fourth Amendment, Cal. Civ. Code § 52.1, and related tort

7 claims.  Defendants' attempt to introduce a discredited "independent coercion"

8 requirement in the Bane Act, and to convert a fact-dependent probable cause dispute

9 into dismissal at the pleading stage, is contrary to Ninth Circuit and California

10 authority.  Defendants' qualified immunity arguments are unavailing, and in any event,

11 do not apply to Plaintiff's state-law Bane Act claim.

12      Defendants' motion should be denied.

13

### STATEMENT OF FACTS

14      Jessamyn Huang ("Plaintiff") ended a fifteen-year relationship with Thomas

15 ("Tom") Rusconi in December 2024.  Complaint ("Compl.") ¶ 19.  Due to Tom's

16 financial issues, the two were still roommates at the time of the February 2025

17 incident.  *Id.*  Tom, who stood a foot taller and nearly three hundred pounds heavier

18 than Plaintiff, had a history of mental health issues, alcoholism, and prior violent

19 episodes. *Id.* ¶ 2, 20.  Over the years, Tom repeatedly threatened to kill Ms. Huang

20 and her loved ones.  *Id.* ¶ 20.

21      Ms. Huang called the Irvine Police Department ("IPD") for help in a domestic

22 violence situation on February 16, 2025.  Plaintiff, already traumatized by several

23 recent events, asked Tom for the keys to their shared vehicle.  *Id.* ¶ 21.  Tom, who was

24 intoxicated, refused to give her the keys and became belligerent at the request.  *Id.*  He

25 became further enraged when Plaintiff put on headphones to drown out his verbal

26 barrage.

27

28

1         Just as he had done in the past, Tom grabbed a kitchen knife shoved it at

2    Plaintiff and told her to stab him in the heart with it. Then, he pointed the knife at

3    Plaintiff and told her to "sleep tight tonight."  Tom told her he was going to kill her,

4    her ex-boyfriend, her parents, her brother, her sister-in-law, and two nieces.  Tom

5    shoved Plaintiff against the apartment radiator, tightly held her arms and swung at her

6    face.  Plaintiff managed to wriggle free, but Tom continued to taunt her by holding the

7    car keys above her head out of her reach.  When she jumped up to reach them, she

8    accidentally knocked Tom's glasses from his face, breaking them.  At that point, Tom

9    threw the open beer can he held in his other hand at Plaintiff's face, hitting her on the

10   right temple and drenching her hair in beer.  *Id.*

11        It was only then, at 12:20 a.m., that Plaintiff called the IPD and reported that

12   Tom had threatened to kill her and asked for their assistance.  Tom then went to his

13   room and shut the door.  *Id.* ¶ 22.

14        Plaintiff met the IPD officers, including arresting officer Garrison Fradella, on

15   their arrival outside her apartment.  *Id.* ¶ 23.  She showed the officers the scratch on

16   her back, and one of the officers photographed it.  *Id.*  Plaintiff was kept outside while

17   the officers went in to speak with Tom.  Officer Gallegos photographed Tom and his

18   reported injuries, which included a less than one-inch cut on his right middle finger.

19   *Id.*  No explanation of how Tom sustained that injury was requested by the officer,

20   provided by Tom or discussed in the police report.  *Id.*  Officer Fradella deemed the

21   small cut on Tom's finger, Tom's tearfulness, and his bold assertion that he had to

22   struggle to break free from the attack of a woman a foot shorter and 300 pounds lighter

23   than he was as a sufficient basis to arrest Plaintiff as the "dominant aggressor."  *Id.*

24        After speaking with Tom, the officers returned, searched Plaintiff for

25   weapons, and handcuffed her hands behind her back.  *Id.* ¶ 24.  At 12:58 a.m., less

26   than forty minutes from the time Plaintiff called the IPD for help, Officer Fradella

27   arrested Plaintiff.  *Id.* ¶ 26.  Officer Fradella told her she was being arrested based on

28

his quick assessment that she was the dominant aggressor. Officer Fradella claimed that under California Penal Code Section 13701 and IPD policy, he was required to arrest someone when responding to a domestic violence call or he would lose his job. *Id.* ¶ 24. Officer Fradella provided no further information except to state that he had provided Tom with mental health resources. Plaintiff was not told what Tom had said, nor given the opportunity to contradict Tom's version of events or provide any additional information bearing on this critical issue. *Id.*

Fradella arrested Plaintiff for infliction of corporal injury on a cohabitant, a felony, per California Penal Code 273.5(a). *Id.* ¶ 27. The charge largely stemmed from the small cut Tom had on his finger, but Plaintiff was not informed that Tom had a cut until after she was already being processed at the IPD custody facility. *Id.* Officer Fradella never questioned Plaintiff about Tom's injury before arresting her. *Id.*

In the police report, Fradella admits that Plaintiff was the victim of verbal abuse and possibly the victim of misdemeanor domestic battery under Penal Code 243(e)(1) but claimed he was unable to substantiate her allegations due to a lack of evidence even though Fradella had photographic evidence of the scratch on Plaintiff's back and the bruises on her arms. *Id.* ¶ 25. Moreover, she was the person who requested assistance, not Tom.

While in custody, Plaintiff filed a complaint against Fradella for failure to conduct a thorough, or arguably any, investigation, which led to Fradella going to see Plaintiff at the Irvine Detention Facility. *Id.* ¶ 29. Plaintiff told Fradella she did not cause the cut to Tom's finger and showed Fradella the marks Tom left on her arms when he grabbed her and shoved her against the wall. *Id.* Fradella, without explanation, "determined the marks were inconsistent with grab marks" and dismissed the long vertical scratch on Plaintiff's back as coming from a "cat's claw," and not from Plaintiff having been shoved against the wall by Tom. *Id.* However, later in his report, he admitted the scratch could be consistent with having been pushed against a

radiator on that wall. *Id.* Even so, Fradella declined to alter his initial arrest decision or the filing charge. *Id.*

Before her release from custody, Plaintiff suffered humiliation and severe emotional and financial stress by undergoing a required mental health screening and having to pay a bail bondsman $5,000. *Id.* ¶ 31. She had to hire a criminal defense attorney, resulting in another $10,000 in fees. *Id.* ¶ 32. The arrest remains on her record as a detention and cannot be completely expunged for a year. *Id.*

While in custody and since her release, Plaintiff became aware of multiple other women who had been similarly misidentified and arrested by Irvine police officers as dominant aggressors instead of the victims of domestic abuse. *Id.* ¶ 30.

At the time of the arrest, Officer Fradella told Plaintiff he was required to arrest someone or face losing his job. This claim was based on Cal. Gov. Code § 13701, which was enacted in 1986 and states in part:

> (a) Every law enforcement agency in this state shall develop, adopt, and implement written policies and standards for officers' responses to domestic violence calls by January 1, 1986. These policies shall reflect that domestic violence is alleged criminal conduct. Further, they shall reflect existing policy that a request for assistance in a situation involving domestic violence is the same as any other request for assistance where violence has occurred.

> (b) The written policies shall encourage the arrest of domestic violence offenders if there is probable cause that an offense has been committed. These policies also shall require the arrest of an offender, absent exigent circumstances, if there is probable cause that a protective order … has been violated. These policies shall discourage, when appropriate, but not

prohibit, dual arrests. Peace officers shall make reasonable efforts to identify the dominant aggressor in any incident. The dominant aggressor is the person determined to be the most significant, rather than the first, aggressor. In identifying the dominant aggressor, an officer shall consider the intent of the law to protect victims of domestic violence from continuing abuse, the threats creating fear of physical injury, the history of domestic violence between the persons involved, and whether either person acted in self-defense. *Id.* ¶ 34.

Although California is a preferred arrest, not mandatory arrest, state, Officer Fradella misstated the law when he told Plaintiff an arrest was mandatory and deemed her the dominant aggressor. *Id.* ¶ 36. Officers, like Fradella, who focus solely on who started an altercation, the emotional response of the victim, or injuries rather than the overall history and ongoing threat are more likely to misidentify the dominant aggressor. *Id.* ¶ 38.

Because Plaintiff had a "mostly calm appearance," and Tom was "uncontrollably sobbing, Fradella assumed Tom was the victim. *Id.* However, probable cause determinations in domestic violence situations require an officer to consider factors such as self-defense and a history of past abuse. *Id.* ¶ 39. In misidentifying Plaintiff as the dominant aggressor, Officer Fradella failed to consider Tom's history of emotionally and physically abusing Plaintiff and the pronounced difference in their physical sizes. *Id.*

## **LEGAL STANDARD**

To overcome a motion to dismiss under Rule 12(b)(6), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal

1   quotation marks omitted).  The complaint need not contain detailed factual allegations;

2   the standard requires "only enough facts to state a claim to relief that is plausible on its

3   face." *Id.* at 570.  The court accepts as true all of the factual allegations set out in

4   plaintiffs' complaint, draws all inferences from those allegations in the light most

5   favorable to plaintiff, and construes the complaint liberally.  *Malibu Textiles, Inc. v.*

6   *Label Lane Int'l, Inc.*, 922 F.3d 946, 951 (9th Cir. 2019); *Williams v. Gerber Prod. Co.*,

7   552 F.3d 934, 937 (9th Cir. 2008).  Factual disputes cannot be resolved at the motion

8   to dismiss stage of litigation.  *Lee v. City of L.A.,* 250 F.3d 668, 688 (9th Cir. 2001).

9       Courts may notice public records for their existence, not the truth of factual

10  assertions within them.  *Id.* at 690; see also  *Khoja v. Orexigen Therapeutics, Inc.*, 899,

11  1003 F.3d 988 (9th Cir. 2018) (warning against using judicial notice/incorporation to

12  defeat a well-pleaded complaint).

13                                      **ARGUMENT**

14      **I.    THE BANE ACT CLAIM (CAL. CIV. CODE § 52.1) IS**
15             **PLAUSIBLY ALLEGED; "INDEPENDENT COERCION" IS NOT**
              **A REQUIRED ELEMENT.**

16      Defendant moves to dismiss Plaintiff's Bane Act claim on one ground, that it

17  does not allege independent coercion.  Dkt. 8 at 5.  The Ninth Circuit rejects an

18  "independent coercion" requirement for Bane Act Fourth Amendment violations.  In

19  doing so, the Ninth Circuit follows California case law in holding that the Bane Act

20  does not require threats/intimidation/coercion independent from the constitutional

21  violation. *Venegas v. Cty. of L.A.*, 32 Cal.4th 820, 843 (2004); *Cornell v. City & Cty. of*

22  *S.F.,* 17 Cal. App. 5th 766 (2017*); Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1042

23  (9th Cir. 2018); *Rodriguez v. Cty. of L.A.*, 891 F.3d 776, 802 (9th Cir. 2018)

24      The California Supreme Court in *Venegas* held for constitutional violations

25  under section 52.1 "plaintiffs need not allege that defendants acted with discriminatory

26  animus or intent, so long as those acts were accompanied by the requisite threats,

27  intimidation, or coercion." 11 Cal. Rptr. 3d at 843.  Furthermore, the California

28

1  Supreme Court declined to place "added limitations on the scope of section 52.1"

2  beyond its plain language. *Id.* Instead, the phrase "threat, intimidation or coercion" in

3  section 52.1 serves as an aggravator justifying the conclusion that the underlying

4  violation of rights is sufficiently egregious to warrant enhanced statutory remedies,

5  beyond tort relief." *Cornell*, 17 Cal. App. 5th at 800. Furthermore, the *Cornell* court

6  stated, "We see no reason that, in addition, the required 'threat, intimidation or

7  coercion,' whatever form it may take, must also be transactionally 'independent' from

8  a properly pleaded—and proved—unlawful arrest. *Id.* The Ninth Circuit follows

9  *Cornell* in acknowledging the "Bane Act does not require the 'threat, intimidation or

10  coercion" element of the claim to be transactionally independent from the

11  constitutional violation alleged . . . . " *Reese*, 888 F.3d at 1043.

12        Defendants do not contest that there is coercion inherent in the constitutional

13  violation alleged here, and there is.[1] Instead, Defendants cite *Lyall v. City of Los*

14  *Angeles*, 807 F.3d 1178, 1196 (9th Cir. 2015), to claim that in order for plaintiffs to

15  recover under the Bane Act in search and seizure cases, plaintiffs must allege threats or

16  coercion beyond that inherent in a detention or search. However, later Ninth Circuit

17  decisions clarified the proper standard, making it clear that independent threats,

18  coercion or intimidation are not required. See *Reese*, 888 F.3d at 1042; *Rodriguez*, 891

19  F.3d at 802.

20        Furthermore, Defendants reliance on *Shoyoye v. Cty. of L.A.*, 203 Cal. App. 4th

21  947 (2012) is misguided. See *Cornell*, 17 Cal.App. 5th at 799. The coercion in

22  *Shoyoye* was "aimed at separating tort liability from statutory liability in the specific

23  context of a jail overdetention following a lawful arrest—on a record where no legally

24  viable claim of any constitutional violation was pleaded or proved…." *Id.* This case is

25

26

_____

27  [1] See *Thomas v. Dillard*, 212 F. Supp. 3d 938, 947 (S.D. Cal. 2016) ( "Coercion is, of
   course, inherent in any arrest, lawful or not.") (citing *Bender v. Cty. of L.A.*, 217 Cal.

28  App. 4th 968, 978 (2013)).

not an overdetention case, it is an unlawful arrest case, and *Shoyoye* is not applicable in unlawful arrest cases. *Id.* at 798.

Here, the coercion is Plaintiff's constitutionally unlawful arrest undertaken in reckless disregard of her clearly established right to be free from seizure without probable cause. This is especially true where state law, under Cal. Penal Code § 13701 (b) directs a police officer to identify the "dominant aggressor" by determining who is "the most significant, rather than the first, aggressor" and by considering "the history of domestic violence between the persons involved, and whether either person acted in self-defense." These allegations are sufficient at the pleading stage under the second element of CACI 3066[2] and Ninth Circuit precedent.

Furthermore, California courts have held that federal qualified immunity does not extend to § 52.1 claims. California law is clear that "'[t]he doctrine of qualified governmental immunity is a federal doctrine that does not extend to state tort claims against government employees.'" *Cousins v. Lockyer*, 568 F.3d 1063, 1072 (9th Cir. 2009)(citing *Venegas v. County of Los Angeles*, 153 Cal. App.4th 1230, 1244–46 (2007). "Qualified immunity is a doctrine of federal common law and, as such, has no application to [plaintiff's] state claims, which are subject only to state statutory immunities." *Cousins*, 568 F.3d at 1072.[3]

---

[2] CACI 3066 identifies the essential elements of a Bane Act claim: intentional interference (or attempts) with rights by threats, intimidation, or coercion; harm; and causation. The Directions for Use and authorities cited reflect that "specific intent" can be shown through conduct done with the particular purpose—or in reckless disregard––of the protected right.

[3] A Bane Act claim requires specific intent, which is satisfied by recklessness. Reese, 888 F.3d at 1045; *Chinaryan v. City of L.A.*, 113 F.4th 888, 907 (9th Cir. 2024). Plaintiff alleges recklessness here because an officer's failure to perform a reasonable investigation, and arresting Plaintiff without probable cause was in reckless disregard of Plaintiff's Fourth Amendment rights. However, Defendants did not move for dismissal on the issue of specific intent, and it is therefore not fully addressed here.

Plaintiff's Opposition to Defendants' 12 (b)(6) Motion to Dismiss

## II.   PLAINTIFF PLAUSIBLY ALLEGES A FOURTH AMENDMENT ARREST WITHOUT PROBABLE CAUSE.

"An arrest without probable cause violates the Fourth Amendment and gives rise to a claim for damages under § 1983." *Borunda v. Richmond*, 885 F.2d 1384, 1391 (9th Cir. 1988). "Probable cause exists when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a prudent person to believe that a suspect has committed, is committing, or is about to commit a crime." *Id.* Probable cause is a factual determination based on the totality of the circumstances. Although it does not require proof beyond a reasonable doubt, if an officer relies on facts that are too weak, speculative or unsubstantiated to support a reasonable belief in guilt, probable cause is lacking, and the resultant arrest is suspect. See e.g. *Buckheit v. Dennis*, 713 F. Supp. 2d 910, 919 (N.D. Cal. 2010) (denying qualified immunity to officers in part because the objective facts would not cause a prudent officer to believe the defendant had committed the offense). The existence of probable cause becomes a question of fact for a jury "where the facts or circumstances surrounding an individual's arrest are disputed." *Borunda*, 885 F.2d at 1390.

Plaintiff was arrested under Cal. Penal Code § 273.5. See Comp. ¶ 27. Probable cause for arrest under Section 273.5 requires evidence of willful infliction of injury resulting in a "traumatic condition" upon a victim, with a traumatic condition being defined as a wound or external or internal injury caused by physical force. Cal. Penal Code § 273.5 (a),(d). An arrest under Section 273.5 must be supported by an officer's observations, victim statements, corroborating circumstances, such as the suspect's behavior, and prior abusive conduct. Officer Fradella had no legitimate basis to find Plaintiff to be the dominant aggressor in these circumstances.

In *Hernandez v. City of Napa*, 781 F. Supp. 2d 975 (N.D. Cal. 2011) summary judgment in a § 1983 suit was denied to defendants in a remarkably similar case, where a woman was arrested following an altercation with her boyfriend. The

court held summary judgment was not warranted because there were disputed issues of material fact as to whether the arresting officer acted unreasonably in deeming the arrestee to be the dominant aggressor, and in finding probable cause for the arrest under the known circumstances at the time of arrest. *Id.* at 996-97.

Like the situation here, the officer in *Hernandez* knew the plaintiff was the person who made the initial 911 call, denied seeing any injuries on plaintiff, but knew other officers had seen marks on the plaintiff, and failed to question plaintiff about the cause of the injuries to her boyfriend and whether she had acted in self-defense. *Id.*at 996-97. The court denied summary judgment holding a reasonable juror might conclude the officer lacked probable cause to determine the plaintiff was the dominant aggressor. *Id.* at 997. Additionally, the court denied the officer qualified immunity because the officer failed to make a considered determination of which party was the dominant aggressor which was required by clearly established law. *Id.* at 1000.

Here, even though faced with the same types of evidence as the officers in *Hernandez*, Officer Fradella inexplicably chose to arrest Plaintiff, who was the victim. Like the plaintiff in *Hernandez*, Plaintiff told Officer Fradella about Tom's past threats against her and her family and Tom's history of prior domestic abuse. Dkt. 8-2 p. 8. Plaintiff told Fradella that Tom had thrown an open beer at her head, grabbed her arms and pushed her against the wall. *Id.* She not only told the officers she had a scratch on her back but also one of the officers photographed it. Compl.¶ 23. Additionally, when Fradella later visited Plaintiff at the Irvine Custody Facility, she showed him the grab marks Tom left on her arm. Compl. ¶ 29; Dkt. 8-2 p. 10. Plaintiff admits to knocking Tom's glasses from his face, while trying to reach the keys Tom tauntingly dangled above her head, but she did so accidentally and had no intention of breaking them. Compl ¶ 21. Contrary to Defendants' assertion Plaintiff does not concede that this or any other action provided probable cause for her arrest under Cal. Penal Code § 273.5,

nor does the paragraph in the Complaint Defendants cite for that proposition support that statement.

Like the officer in *Hernandez*, Officer Fradella failed to fully (or even partially) evaluate the situation prior to arresting Plaintiff. He never asked Tom how he sustained the small cut on his finger and failed to ascertain if it was self-inflicted even though Fradella states in his report he "was concerned about his behavior and statement of self harm." Dkt. 8-2, p. 7. Additionally, Fradella never asked Plaintiff if she had caused the injury to Tom, and in fact, she did not even know about the finger cut until after she was already being processed at the Irvine custody facility. Compl. ¶ 27.

At the motion to dismiss stage, the Court must accept the facts as alleged in the light most favorable to Plaintiff. Those facts plainly establish that the officer lacked probable cause to arrest her or to deem her the dominant aggressor, and thus the complaint is more than sufficient to withstand dismissal.

### III.    DISMISSAL ON QUALIFIED IMMUNITY GROUNDS AT THE PLEADING STAGE IS DISFAVORED, BUT REGARDLESS PLAINTIFF'S FEDERAL CLAIMS ARE NOT BARRED BY QUALIFIED IMMUNITY.

"Qualified immunity is an affirmative defense that must be raised by a defendant. *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001). The "[d]efendant, 'has the burden of pleading and proving' that he is entitled to qualified immunity." *Smith v. Giovannini*, No. 2:15-cv-1410 DB PS, 2018 U.S. Dist. LEXIS 144617, at *19 (E.D. Cal. Aug. 23, 2018) (citing *Frudden v. Pilling*, 877 F.3d 821, 831 (9th Cir. 2017)). Unless the court can "determine based on the complaint itself, that qualified immunity applies," a Rule 12(b)(6) dismissal "is not appropriate." *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016); *Hernandez v. City of San Jose*, 241 F. Supp. 3d 959, 975 (N.D. Cal. 2017) (a motion to dismiss on the basis of qualified immunity should

1  be denied if the complaint alleges acts to which qualified immunity "may not apply.")

2  (citing *Groten*, 251 F.3d at 851.).  Under this standard, it is frequently impossible to

3  "determine based on a complaint alone that qualified immunity is warranted." *Id.*

4      In a case concerning an arrest without probable cause, qualified immunity is

5  inappropriate unless a reasonable officer could find probable cause. *E.g. Reed v.*

6  *Lieurance*, 863 F.3d 1196, 1207 n.4 (9th Cir. 2017); *Smith,* 2018 U.S. Dist. LEXIS

7  144617 at *19; *Rosebrock v. Perez*, No. CV 17-4354 DSF (ASx), 2018 U.S. Dist.

8  LEXIS 239661, at *6 (C.D. Cal. Feb. 7, 2018).  The Court considers whether it was

9  objectively reasonable for an officer to believe that he had probable cause.  *Rosenbaum*

10  *v. Washoe Cty.,* 663 F.3d 1071, 1078 (9th Cir. 2011).

11      Here Plaintiff's allegations of arrest without probable cause in violation of the

12  Fourth Amendment are more than sufficient for the court to determine the action is

13  entitled to go forward.  For the reasons identified above in Section II, Plaintiff has

14  adequately alleged Defendants committed a constitutional violation.  Furthermore, the

15  requirement for an officer to perform an adequate investigation was clearly

16  established.  Under the facts as alleged, no reasonable officer could think there was

17  probable cause for Plaintiff's arrest.

18      The Ninth Circuit has expressly characterized an officer's duty to perform an

19  adequate investigation.  For probable cause to exist, an officer must "have knowledge

20  or reasonably trustworthy information sufficient to lead a person of reasonable caution

21  to believe that an offense has been or is being committed by the person being

22  arrested." *Sialoi v. City of San Diego*, 823 F.3d 1223, 1232 (9th Cir. 2016). "In

23  establishing probable cause, officers may not solely rely on the claim of a citizen

24  witness that he was a victim of a crime but must independently investigate the basis of

25  the witness' knowledge or interview other witnesses." *Arpin v. Santa Clara Valley*

26  *Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001); see also *Fuller v. M.G. Jewelry*,

27  950 F.2d 1437, 1444 (9th Cir. 1991) (holding that the presumptive reliability of citizen

28

1   witnesses did not remove the duty of officers in the situation to examine further the

2   basis of the witness' knowledge or talk with any other witnesses"); *Hopkins v.*

3   *Bonvicino*, 573 F.3d 752, 772-73 (9th Cir. 2009) (finding the officer's investigation

4   insufficient to support probable cause where they violated the rule set forth in *Arpin*

5   and *Fuller*).

6          Even when an officer initially had probable cause to justify an arrest, if new

7   information obtained at the scene indicates "that there is less than a fair probability that

8   the [individual] has committed or is committing a crime," then "execution of the arrest

9   or continuation of the arrest is illegal." *Sialoi*, 823 F.3d at 1232.  Officers "may not

10  disregard facts tending to dissipate probable cause." *United States v. Ortiz-Hernandez*,

11  427 F.3d 567, 574 (9th Cir. 2005). If, as occurred here, the circumstances an officer

12  relies on "are susceptible to a variety of credible interpretations not necessarily

13  compatible with nefarious activities," probable cause is lacking. *Gasho v. United*

14  *States*, 39 F.3d 1420, 1432 (9th Cir. 1994) (internal citations omitted).

15         In *Peng v. Hu*, 335 F.3d 970, 978 (9th Cir. 2003), a domestic dispute case in

16  which the plaintiff alleged his arrest was without probable cause, the court cited *Arpin*

17  and *Fuller* for the requirement that an arresting officer have "a sufficient basis of

18  knowledge" before making an arrest.  The arresting officer obtained not only a detailed

19  recitation of facts from the victim but also interviewed two more witnesses who

20  corroborated the victim's account. *Id.* at 979.  The court held probable cause was not

21  defeated because the arresting officer performed a reasonable investigation and "1) the

22  victim's statements are sufficiently definite to establish that a crime has been

23  committed; and 2) the victim's complaint is corroborated by either the surrounding

24  circumstances or other witnesses." Id. at 979.

25         Fradella arrested Plaintiff under Section 273.5, which requires that Plaintiff

26  willfully inflicted the small cut on Tom's finger, but, in contrast to the arresting officer

27  in *Peng*, Fradella failed to do even the most minimal investigation regarding how

28

1    Tom's injury occurred.  Fradella's report confirms he never asked Plaintiff about
2    Tom's injury, nor does it appear he even asked Tom how he got the cut. As such, there
3    was no victim's statement "sufficiently detailed" to even begin to support probable
4    cause.  Fradella simply saw the cut, assumed it "had been sustained that night," and
5    then unreasonably jumped to the conclusion Plaintiff was the cause and arrested her.
6    There was no corroboration of Fradella's assumption, because Plaintiff did not even
7    know Tom had a cut on his finger until after she was already being held at the IPD
8    facility.  To satisfy the factors establishing probable cause in *Peng*, a reasonable officer
9    in Fradella's position would have, at a bare minimum, asked both parties for
10   information regarding Tom's injury.  Had Fradella asked Plaintiff prior to arresting
11   her, she would have explained—as she later did at the IPD facility when Fradella came
12   to see her after she filed a complaint over his inadequate investigation—that Tom
13   frequently played with knives, running them across his hands and arms, and that he
14   likely self-inflicted the wound.
15        At the pleading stage, the Court must credit Plaintiff's well-pleaded allegations
16   and draw all reasonable inferences in her favor.  Accepting those allegations, the
17   complaint plausibly alleges a Fourth Amendment violation: the arrest was made
18   without probable cause because the officer failed to solicit the necessary information
19   from both parties and disregarded obvious, readily available investigative steps that
20   would have clarified the facts.  Ninth Circuit precedent has clearly established that
21   officers may not rely solely on an unexamined accusation and must conduct a
22   reasonable investigation before making an arrest; this duty was clearly established well
23   before the events at issue.  No reasonable officer would have thought the arrest was
24   supported by probable cause given the allegations in Plaintiff's complaint.  Because
25   the complaint alleges the violation of a clearly established right, dismissal on
26   qualified-immunity grounds is inappropriate and the motion to dismiss should be
27   denied.
28

1

2

## IV.    State Tort Claims Are Adequately Pleaded

### A. IIED

Plaintiff has sufficiently pleaded the required elements of an IIED claim under California law.  These elements are (1) extreme and outrageous conduct by the defendant; (2) intent to cause, or reckless disregard of the probability of causing, emotional distress; (3) severe or extreme emotional distress suffered by the plaintiff; and (4) actual and proximate causation of the emotional distress by the defendant's conduct.  *Wynes v. Kaiser Permanente Hosps.*, 936 F. Supp. 2d 1171, 1194 (E.D. Cal. 2013)

Courts have recognized that an unlawful arrest without probable cause may constitute "extreme and outrageous conduct" sufficient to support an IIED claim.  See *McDonald v. Cty. of Sonoma*, 506 F. Supp. 3d 969, 987 (N.D. Cal. 2020) (denying motion to dismiss a plaintiff's IIED claim where the defendant officer DS Perkins "lacked probable cause to arrest and search [the plaintiff], DS Perkins perpetuated his conduct with reckless disregard for the probability of causing emotional distress.").  *Id.* Here, Plaintiff alleges she was arrested without probable cause, satisfying the first element of an IIED claim.

The California Supreme Court has explained the second element of an IIED claim is satisfied when the "defendant is aware, but acts with reckless disregard, of the plaintiff and the probability that his or her conduct will cause severe emotional distress to the plaintiff."  *Christensen v. Superior Court*, 54 Cal. 3d 868, 905 (1991).  Here, Officer Fradella knew Plaintiff was emotionally fragile because she was tearful in describing the events the led up to the altercation and he quoted her in his report as saying "obviously, I'm having a pretty shit day."  Compl. ¶ 21; Dkt. 8-2 p. 8. Fradella's report further documented Plaintiff's emotional lability by noting Plaintiff "spoke about what happened in an excited manner.  She often interrupted herself and went on tangents," such that he was required to "stop and clarify on several occasions"

what she was referring to. Dkt. 8-2 p. 8.  Nevertheless, Fradella proceeded with reckless disregard to Plaintiff's emotional well-being to label her as the dominant aggressor and arrest her, knowing full well that an arrest would cause Plaintiff humiliation, anxiety and fear.

Without question, Plaintiff has alleged she has suffered emotional distress severe enough to satisfy the third element of an IIED claim.  California law does not require physical manifestations of emotional distress but does require the distress be severe or extreme. See *McKenna v. Permanente Med. Grp., Inc.,* 894 F. Supp. 2d 1258, 1274 (E.D. Cal. 2012) ("[S]evere emotional distress' means highly unpleasant mental suffering or anguish from socially unacceptable conduct . . . , which entails such intense, enduring and nontrivial emotional distress that no reasonable [person] in a civilized society should be expected to endure it." (citing *Schild v. Rubin*, 232 Cal.App.3d 755, 762-763(1991) (internal citations omitted)).  In the aftermath of the arrest, Plaintiff experienced agoraphobia severe enough to require daily therapist appointments for more than two weeks.  Compl. ¶ 33.  She had such significant difficulty functioning at work, that she was at risk of losing her job.  *Id.*  Plaintiff continues to feel humiliation and anxiety related to the detention remaining on her record. Compl. ¶ 32.

Finally, Plaintiff has adequately alleged causation. The labeling of Plaintiff as the dominant aggressor, the arrest without cause, the detention, and the resultant emotional harm are directly linked to Fradella's actions.

Plaintiff's IIED claim should not be dismissed.

### B. Negligence

Under California law the elements of a negligence claim include a legal duty, breach of that duty, causation, and damages.  *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 534 (2009).  Defendants appear to suggest that law enforcement has no duty not to arrest people without probable cause. They cite no authority for this and grossly

misstate *Zelig v. County of Los Angeles* to do so. Dkt. 8 at 17. *Zelig* itself confirms that a police officer, like others, has a duty to exercise due care in *his* actions such that he does not unreasonably and reasonably foreseeably expose a person to a risk of harm. *Zelig v. Cty of L.A.*, 27 Cal. 4th 1112, 1128 (2002). *Zelig* held that law enforcement officers – like anyone – have no duty (outside of a special relationship) that makes them liable for failing to take affirmative steps to come to someone's aid to prevent an injury by someone else. *Id.* at 1128-29.

Initially, that carveout to the ordinary principles is simply irrelevant – Plaintiff's claim is not that Officer Fradella failed to protect Plaintiff from someone else's actions. Plaintiff's claim is that Officer Fradella himself arrested her without probable cause. Officers certainly have a duty to use reasonable care in an arrest, including not to arrest persons without probable cause – and Defendants cite no authority suggesting otherwise. *E.g.* Cal. Pen Code § 836 (d)(1); Cal. Pen. Code § 13701. There is no real dispute that there is such a duty, and Defendants cite nothing to the contrary. *E.g. Orin v. Barclay*, 272 F.3d 1207, 1219 (9th Cir. 2001) ("Orin properly states that the defendants had a duty not to arrest him without probable cause.")

Additionally, there is a special relationship here. There is a "well-established special relationship between jailers and prisoners that is equally applicable to officers of the law who take arrestees into custody." *Lum v County of San Joaquin*, 756 F. Supp. 2d 1243, 1254. (E.D. Cal. 2010). As such, officers "have a duty to act with reasonable care toward those in their custody." *Id.* at 1255. Liability for breach of this duty may be imposed if an officer undertakes affirmative acts that increase the risk of harm. *Williams v. State of California*, 34 Cal. 3d 18, 24 (1983).

Here, Officer Fradella breached a legal duty by arresting Plaintiff, without probable cause, as already outlined above, and failing to properly determine the dominant aggressor as required under Section 13701. The complaint's factual allegations, when taken as true, plausibly suggest a claim for relief.

1    Contrary to Defendants assertion, Cal. Gov't Code § 820.4 is not applicable in

2    here.  The plain text states as much.  Section 820.4 states, "A public employee is not

3    liable for his act or omission, exercising due care, in the execution or enforcement of

4    any law. *Nothing in this section exonerates a public employee from liability for false*

5    *arrest or false imprisonment.*"  (emphasis added).  Plaintiff has plausibly alleged that

6    Fradella failed to exercise due care, which resulted in false arrest.

7    Moreover, the discretionary acts protected by Section 820.2 are basic policy

8    decisions not ministerial or operational acts.  *Caldwell v Montoya*, 10 Cal. 4th 972,

9    981 (1995).  The California Supreme Court held "there is no basis for immunizing

10    lower-level, or "ministerial," decisions that merely implement a basic policy already

11    formulated."  *Id.* The immunity does not extend to cases like this alleging an arrest

12    without probable cause.  *E.g.  Martinez v. City of L.A.,* 141 F.3d 1373, 1379 (9th Cir.

13    1998) (holding the immunity does not apply to a plaintiff's claim that a police officer

14    acted "improperly in deciding to seek his arrest" and acted "negligently in conducting

15    the investigation to verify that he was the correct suspect.")  As such, Defendants do

16    not have discretionary immunity and are subject to Plaintiff's plausibly pleaded

17    negligence claims. The City is also vicariously liable for Officer Fradella's

18    negligence. Cal. Gov't Code § 815.2.

19    **V.    PLAINTIFF HAS PLAUSIBLY ALLEGED A NEGLIGENT**

20    **EMPLOYMENT AND SUPERVISION CLAIM, AND *MONELL***

21    **LIABILITY.**

22    **A. Negligent Training and Supervision**

23    An injured party seeking to affix liability on a tortfeasor's employer must

24    demonstrate either direct or vicarious liability.  *Koussaya v. City of Stockton*, 54 Cal.

25    App. 5th 909, 943 (2020).  California bars direct common-law negligent training

26    claims against public entities unless authorized by statute but allows vicarious liability

27    under Cal. Gov't Code § 815.2 for negligent acts of employees without any additional

28    statutory authority.  *de Villers v. Cty. of San Diego*, 156 Cal. App. 4th 238, 249, 262

1  (2007).  The City of Irvine is both directly and vicariously liable for the harms Plaintiff

2  suffered.

3      Direct liability occurs "[w]here a public entity is under a mandatory duty

4  imposed by an enactment that is designed to protect against the risk of a particular kind

5  of injury," and it fails to discharge the duty resulting in the particular injury, "unless

6  the public entity establishes that it exercised reasonable diligence to discharge the

7  duty." Cal. Gov't Code 815.6.  Under Cal. Penal Code § 13701[4], IPD officers had a

8  statutory and mandatory duty to make "reasonable efforts" to correctly identify the

9  dominant aggressor yet, failed to do so here, causing the harms Ms. Huang suffered

10  and that the statute was designed to prevent.  As such, the City is directly liable.

11      Moreover, the City is vicariously liable because the failures alleged sound in

12  negligence by IPD employees, including supervisors, acting within the scope of their

13  employment. *Koussaya*, 54 Cal. App. 5th at 943.  "[T]he general rule is that an

14  employee of a public entity is liable for his [or her] torts to the same extent as a private

15  person (§ 820, subd. (a)) and the public entity is vicariously liable for any injury which

16  its employee causes (§ 815.2, subd. (a)) to the same extent as a private employer (§815

17  subd. (b))." *Koussaya*, 54 Cal. App. 5th at 944 (2020).[5]

18      The City is vicariously liable under Cal. Gov. Code § 815.2 for negligent

19  employment and supervision given the supervisors' requirement, on pain of firing, to

20  arrest someone when officers respond to domestic violence calls, and failing to

21  implement standards for identifying dominant aggressors.  Officer Fradella's own

22  statements and arrest indicates that these actions caused Ms. Huang's injury.

23

24  _____

25  [4] Cal. Penal Code § 13701 (a) Every law enforcement agency in this state *shall*
26  develop, adopt, and implement written policies and standards for officers' responses to
   domestic violence calls by January 1, 1986. (emphasis added).

27  [5] Plaintiffs need not specifically name or join individual supervisors as Defendants to
   support vicarious liability. *Perez v. City of Huntington Park*, 7 Cal. App. 4th 817, 820
28  (1992).

Plaintiff's Opposition to Defendants' 12 (b)(6) Motion to Dismiss

1

### B. *Monell* Liability

2

Plaintiff has alleged a constitutional violation for the reasons identified above.  §

3
II, *supra*.   A plaintiff alleges a *Monell* claim against a city where the action is made

4
"pursuant to governmental 'custom' . . . ." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658,

5
691 (1978).  A custom need not be formal or express.  *Id; City of St. Louis v.*

6
*Praprotnik*, 485 U.S. 112, 127 (1988).  A plaintiff states a *Monell* claim where

7
allegations and any inferences from them, construed in the light most favorable to

8
plaintiff, plausibly indicate that an injury was caused by a practice or custom "which

9
constitutes… standard operating procedure." *Wallis ex rel. Wallis v. Spencer,* 202 F.3d

10
1126, 1142 (9th Cir. 1999).[6]

11

Plaintiff has alleged this here.  Plaintiff plausibly alleged not only an IPD policy,

12
but one so strong that officers would be terminated if they did not follow it. Compl. ¶¶

13
3, 24, 34.   Officer Fradella himself described it this way.  *Id.* The statements of an

14
officer, obviously, can indicate a custom or standard operating procedure.  *E.g. Wallis*,

15
202 F.3d at 1126 (precluding summary judgment on the basis of officer testimony, let

16
alone dismissal).

17

In responding to a call concerning domestic violence – as with any call – there

18
may or may not be probable cause to arrest a person.  There was none here.  The facts

19
alleged support a reasonable inference that Officer Fradella was acting pursuant to

20
departmental practice that requires "someone" be arrested in domestic violence

21
responses to satisfy performance expectations regardless of probable cause or proper

22
dominant aggressor analysis. E.g. Compl. ¶ 24.  It is certainly a reasonable inference

23
that an IPD policy *requiring* an arrest caused Ms. Huang's arrest.

24

25

26
[6] The allegations need only include enough underlying facts to give fair notice and

27
plausibly suggest entitlement to relief.  *AE v. Cty. of Tulare*, 666 F.3d 631, 637 (9th
Cir. 2012); see also *Starr v. Baca*, 652 F.3d 1202, 1217 (9th Cir. 2011) (detailed

28
factual allegations suffice to survive dismissal).

A failure-to-train can also be a "moving force" for *Monell* liability.  See *Johnson v. Hawe*, 388 F.3d 676, 686 (9th Cir. 2004) (holding failure to train officers about the Privacy Act may amount to "deliberate indifference" toward unlawful arrests under its provisions); *Long v. Cty. of L.A.,* 442 F.3d 1178, 1186 (9th Cir. 2006) (stating "A municipality's failure to train an employee who has caused a constitutional violation can be the basis for § 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the employee comes into contact."). Even without showing a pattern of constitutional violations, a plaintiff can succeed in proving a failure-to-train claim "where a violation of federal rights may be highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Id.* (internal citations omitted).

Domestic violence incidents with determinations of who is the dominant aggressor are a recurring situation where inadequate training can lead to a constitutional violation, as occurred here.  During and since Plaintiff's detention, Ms. Huang became aware of two other women who had been similarly misidentified as the dominant aggressor and arrested by Irvine police officers.  Compl. ¶ 30.

These allegations of a custom and practice are more than adequate to please a *Monell* claim.  Such conduct is inconsistent with Section 13701's mandate to identify the dominant aggressor, and underscores the concern that, under Chief Kent's leadership, the Irvine Police Department failed to train its officers that the proper course is to determine the dominant aggressor, instead the Department promulgated a policy of default arrest.

**VI.   THE CAL. CODE CIV. PROC. § 526a CLAIM SHOULD BE DISMISSED WITHOUT PREJUDICE BECAUSE ARTICLE III BARS IT IN FEDERAL COURT AND PLAINTIFF DOES NOT OPPOSE DISMISSAL WITHOUT PREJUDICE OF THE MALICIOUS PROSECUTION CLAIM**

Defendants removed this action which includes a Cal. Code Civ. Proc. § 526a taxpayer action that properly sought injunctive relief in state court.  In federal court,

however, Article III standing doctrine bars adjudication of such taxpayer suits. See *Cantrell v. City of Long Beach*, 241 F.3d 674, 683 (9th Cir. 2001) (dismissing a Section 526a claim in federal court and noting "taxpayer status without more, does not suffice under Article III to demonstrate an injury."). The correct remedy is to dismiss without prejudice this non-justiciable state-law claim so that Plaintiff can refile in state court.

Plaintiff does not oppose dismissal without prejudice of the malicious prosecution claim.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' motion as to all claims except (1) Claim 6, alleging violation of 42 U.S.C. § 1983 (Malicious Prosecution), for which Plaintiff does not oppose dismissal without prejudice; and (2) Claim 8, seeking injunctive relief pursuant to Cal. Civ. Proc. Code § 526a which should be dismissed without prejudice so that Plaintiff may refile it in state court. As to all other claims, any dismissal should be without prejudice and with leave to amend.

Dated:  October 7, 2025                    SCHONBRUN SEPLOW HARRIS
                                           HOFFMAN & ZELDES LLP

                                           By: s/ Paul Hoffman

                                           Paul Hoffman

                                           John C. Washington

                                           Karen Kartun

                                           *Attorneys for Plaintiff*

Plaintiff's Opposition to Defendants' 12 (b)(6) Motion to Dismiss