# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| JESSAMYN HUANG, | Case No. SA CV 25-01904-DFM |
| Plaintiff, | Order Re: Motion to Dismiss (Dkt. 8) |
| v. | |
| CITY OF IRVINE et al., | |
| Defendants. | |

Defendants City of Irvine ("City"), Irvine Police Department ("IPD") Chief Michael Kent, and IPD Officer Garrison Fradella ("Fradella" and collectively with the City, IPD, and Chief Kent, "Defendants") move to dismiss all causes of action alleged in Plaintiff Jessamyn Huang's Complaint. See Dkt. 8 ("MTD" or "Motion"). Plaintiff opposed. See Dkt. 9 ("Opp'n"). Defendants replied. See Dkt. 10 ("Reply").

The Court finds this matter appropriate for resolution without a hearing and VACATES the hearing scheduled for November 4, 2025. See Fed. R. Civ. P. 78; L.R. 7-15. For the following reasons, the Court GRANTS the motion in part.

## I.    FACTUAL ALLEGATIONS

The following facts are taken from Plaintiff's Complaint and accepted as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Plaintiff's fifteen-year relationship with Tom Rusconi ("Rusconi") ended in December 2024. See Dkt. 1-2 ("Complaint") ¶ 19. Plaintiff and Rusconi remained roommates due to his financial circumstances. See id. Rusconi had a history of mental health issues, alcoholism, and prior violent episodes, and repeatedly threatened to kill Plaintiff. See id. ¶ 20.

On February 16, 2025, Plaintiff called IPD and reported that Rusconi had tried to kill her. See id. ¶¶ 21-22. Plaintiff was waiting outside when four IPD officers arrived. See id. ¶ 23. The officers spoke to Plaintiff and then went inside to speak with Rusconi. See id. Fradella arrested Plaintiff as the "dominant aggressor" based on a small cut on Rusconi's finger, his tearfulness, and his assertion that Plaintiff attacked him. See id. ¶¶ 23-24. Fradella told Plaintiff that under California Penal Code Section 13701 and IPD policy, he was required to arrest someone when responding to a domestic violence call or risk losing his job. See id. ¶ 24. Fradella acknowledged in his report that Plaintiff was the victim of verbal abuse and possibly misdemeanor domestic battery but was unable to substantiate her allegations. See id. ¶ 25.[1]

While in custody, Plaintiff filed a complaint against Fradella for failing to conduct a thorough investigation. See id. ¶ 29. Fradella retook Plaintiff's statement and determined that her marks were inconsistent with grab marks and her long vertical scratch came from a cat, although he later acknowledged that the scratch could be consistent with being shoved up against the radiator. See id. Fradella concluded there was no new evidence and declined to alter his initial arrest decision or the filing charge, and Plaintiff was transported to

---

[1] The Court GRANTS Defendants' unopposed motion for judicial notice of the IPD Case Report for Case Number IPD-25-01881 and IPD Policy No. 322 entitled "Domestic Violence." Dkt. 8-1, Exs. 1 ("Case Report"), 2 ("IPD Policy").

Orange County jail. See id. Ultimately, the charges against Plaintiff were dropped due to insufficient evidence. See id. ¶ 32.

Plaintiff brings eight causes of action: (1) violation of the Tom Bane Civil Rights Act; (2) intentional infliction of emotional distress; (3) negligence; (4) negligent hiring/employment; (5) violation of the Fourth Amendment; (6) malicious prosecution; (7) Monell liability; and (8) injunctive relief.

## II.    LEGAL STANDARD

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." Somers v. Apple Inc., 729 F.3d 953, 959 (9th Cir. 2013) (citation omitted). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

In resolving a Rule 12(b)(6) motion under Twombly, the Court must follow a two-pronged approach. First, the Court must accept "all well-pleaded" factual allegations as true, and construe such allegations "in the light most favorable to the non-moving party." Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010) (citation omitted). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Moreover, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoting Twombly, 550 U.S. at 555). Second, assuming the veracity of well-pleaded factual allegations, the Court must "determine whether they plausibly give rise to an entitlement to relief." Id. at 679. This determination is context-specific, requiring the Court to draw

on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Id.

## III.   DISCUSSION

The Court has addressed Defendants' arguments in a different order than presented, as the lawfulness of Plaintiff's arrest underpins the remaining claims. Plaintiff's sixth and eighth causes of action for injunctive relief under California Code of Civil Procedure § 526a and malicious prosecution are dismissed without prejudice, per her request. See Opp'n at 29-30.

## A.   Unlawful Arrest

The Court begins with Plaintiff's fifth cause of action, which alleges a violation of 42 U.S.C. § 1983 against Fradella for unlawful arrest. See Complaint ¶¶ 68-74. Defendants argue that Plaintiff cannot establish the arrest lacked probable cause. See MTD at 19-21. Defendants also argue that Fradella is entitled to qualified immunity. See id. at 21-23.

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152 (2004) (citations omitted). "[P]robable cause exists when, under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the suspect] had committed a crime." Peng v. Mei Chin Penghu, 335 F.3d 970, 976 (9th Cir. 2003) (quoting United States v. Buckner, 179 F.3d 834, 837 (9th Cir. 1999)). If a defendant had probable cause to make an arrest, then the plaintiff's arrest is lawful regardless of the officer's subjective motivation, see Tatum v. City & Cnty. of S.F., 441 F.3d 1090, 1094 (9th Cir. 2006), and once probable cause is established, an officer is under no duty to further investigate or look for additional evidence which may exculpate the accused, see Broam v. Bogan,

320 F.3d 1023, 1032 (9th Cir. 2003) (quoting <u>Ahlers v. Schebil</u>, 188 F.3d 365, 371 (6th Cir. 1999).

Fradella arrested Plaintiff for violation of California Penal Code § 273.5. <u>See</u> Complaint ¶ 27. Under that statute, any person "who willfully inflicts corporal injury resulting in a traumatic condition" upon a cohabitant is guilty of a felony. Cal. Penal Code § 273.5(a). A "traumatic condition" includes a wound or external injury caused by physical force. <u>See</u> <u>id.</u> § 273.5(d). Importantly for purposes of this Motion, California Penal Code § 13701 requires that "[p]eace officers shall make reasonable efforts to identify the dominant aggressor in any incident." The statute elaborates: "[t]he dominant aggressor is the person determined to be the most significant, rather than the first, aggressor." Cal. Penal Code § 13701(b). In identifying the dominant aggressor, IPD Policy requires the officer to consider the intent of domestic violence law, threats creating fear of physical injury, history of domestic violence between the persons involved, and whether either person acted in self-defense. <u>See</u> IPD Policy at 8.

Defendants argue that Plaintiff's allegations demonstrate a fair probability that she was the dominant aggressor and had willfully inflicted a corporal injury on a cohabitant resulting in a traumatic condition. <u>See</u> MTD at 20-21. Plaintiff contends that when all allegations are construed in the light most favorable to her, Fradella lacked probable cause to arrest her or deem her the dominant aggressor. <u>See</u> Opp'n at 17-19.

Plaintiff relies on <u>Hernandez v. City of Napa</u>, 781 F. Supp. 2d 975 (N.D. Cal. 2011), which involved a plaintiff who was arrested for domestic violence following an altercation with her boyfriend. In denying summary judgment for defendants, the court noted that the arresting officer knew that a female had made the initial 911 call, the boyfriend appeared intoxicated and was in his underwear, plaintiff owned the house and wanted him to leave, and plaintiff

testified that she told the officer that the boyfriend had attacked her. See id. at 996-97. Recognizing that the question "is a close one," the court concluded that a reasonable juror "might be able to conclude that [the officer] lacked probable cause to determine that Plaintiff was the dominant aggressor." Id. at 997 (emphasis in original).

In contrast, Defendants cite Murray v. City of Carlsbad, No. 08-2121, 2010 WL 2839477 (S.D. Cal. July 19, 2010). But Murray was decided on summary judgment, not a motion to dismiss. Additionally, in Murray, the officer's probable cause determination was supported by the victim's statement that plaintiff threw her against the wall and choked her, the victim's demeanor, and redness around the victim's neck in addition to an injury to her left arm. See id. at *4-5.

Plaintiff's allegations are weaker than Hernandez but stronger than Murray. Plaintiff called the non-emergency IPD phone number and reported that Rusconi had threatened to kill her. See Complaint ¶ 22. When Fradella arrived, he asked Plaintiff if she had been drinking because she smelled like beer. See id. ¶ 23. Plaintiff showed the officers a scratch on her back but could not recall how the injury occurred. See id. IPD Officer Gallegos photographed Rusconi's reported injuries, which included a less than one inch cut on his right middle finger, although no explanation of how he sustained that injury was requested by the officer or provided by Rusconi. See id. Ultimately, Fradella deemed the small cut on Rusconi's finger, his tearfulness, and his assertion that he had to struggle to break free from Plaintiff's attack to be a sufficient basis to arrest her as the dominant aggressor. See id. When, as the Court must, it takes all of these allegations in the light most favorable to Plaintiff, the Court finds that she has plausibly stated a claim for unlawful arrest.

The Court turns then to Defendants' qualified immunity argument. A court considering a claim of qualified immunity must determine: (1) whether the plaintiff has alleged the deprivation of an actual constitutional right, and (2) whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. See Pearson v. Callahan, 555 U.S. 223 (2009). "When, as here, defendants assert qualified immunity in a motion to dismiss under Rule 12(b)(6), dismissal is not appropriate unless we can determine, based on the complaint itself, that qualified immunity applies." O'Brien v. Welty, 818 F.3d 920, 936 (9th Cir. 2016) (internal quotation marks and citation omitted).

Plaintiff argues that qualified immunity is inappropriate given Fradella's failure to do "even the most minimal investigation" regarding how Rusconi's injury occurred. See Opp'n at 21-22. The Court agrees. Plaintiff alleges that Fradella documented Rusconi's injury but never asked him what caused it and ultimately arrested her because he had to under IPD Policy. When drawing all reasonable inferences in Plaintiff's favor, dismissal for qualified immunity is not appropriate. "Once an evidentiary record has been developed through discovery, defendants will be free to move for summary judgment based on qualified immunity." O'Brien, 818 F.3d at 936. Defendants' motion to dismiss Plaintiff's § 1983 claim is denied.

**B.    Bane Act**

Plaintiff's first cause of action alleges a violation of California's Tom Bane Civil Rights Act against Fradella. See Complaint ¶¶ 41-48. Defendants argue that Plaintiff's Bane Act claim must be dismissed because she fails to allege any facts showing that Fradella used threats, intimidation, or coercion independent of the arrest itself. See MTD at 15. Instead, argue Defendants, Plaintiff relies on the conclusory allegations that her arrest lacked probable cause. See id.

7

"The Bane Act civilly protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out 'by threats, intimidation or coercion.'" Reese v. Cnty. of Sacramento, 888 F.3d 1030, 1040 (9th Cir. 2018) (quoting Venegas v. Cnty. of Los Angeles, 153 Cal. App. 4th 1230 (2007)). "The elements of a Bane Act claim are essentially identical to the elements of a § 1983 claim, with the added requirement that the government official had a 'specific intent to violate' a constitutional right." Hughes v. Rodriguez, 31 F.4th 1211, 1224 (9th Cir. 2022) (quoting Reese, 888 F.3d at 1043).

"[T]he Bane Act's requirement that interference with rights must be accomplished by threats, intimidation or coercion has been the source of much debate and confusion." Cornell v. City & Cnty. of S.F., 17 Cal. App. 5th 766, 801 (2017) (internal quotation marks and citation omitted). In Cornell, the California Court of Appeal explicitly rejected the argument that Defendants advance here, explaining that the text of the Bane Act does not require "that the offending 'threat, intimidation or coercion' be 'independent' from the constitutional violation alleged." Id. at 800. Rather, in the context of an unlawful arrest, "the egregiousness required by Section 52.1 is tested by whether the circumstances indicate the arresting officer had a specific intent to violate the arrestee's right to freedom from unreasonable seizure." Id. at 801-02. "We see no convincing evidence that the state's supreme court likely would not follow Cornell." Reese, 888 F.3d at 1043  (internal quotation marks and citation omitted).

Defendants respond that state and federal court cases "overwhelmingly hold" that a wrongful arrest, without more, does not state a Bane Act claim. See Reply at 10-12. But Defendants cite cases that were decided before Cornell. Defendants further suggest that Cornell is distinguishable because Plaintiff has not alleged excessive force, verbal threats, or intimidation tactics.

<u>See</u> Reply at 9. But that is not required: "where, as here, an unlawful arrest is properly pleaded and proved, the egregiousness required by Section 52.1 is tested by whether the circumstances indicate the arresting officer had a specific intent to violate the arrestee's right to freedom from unreasonable seizure, not by whether the evidence shows something beyond the coercion 'inherent' in the wrongful detention." <u>Cornell</u>, 17 Cal. App. 5th at 801-02 (citations omitted).

Thus, to prevail on her Bane Act claim, Plaintiff must prove that that (1) Fradella violated her Fourth Amendment rights to be free from unreasonable seizures, and that (2) the violation was carried out with specific intent to deprive her of that right. The specific intent element comprises two questions: "Is the right at issue clearly delineated and plainly applicable under the circumstances of the case," and did "defendant commit the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that right?" <u>Sandoval v. Cnty. of Sonoma</u>, 912 F.3d 509, 520 (9th Cir. 2018) (cleaned up and simplified) (citation omitted). "So long as those two requirements are met, specific intent can be shown 'even if the defendant did not in fact recognize the unlawfulness of his act' but instead acted in 'reckless disregard' of the constitutional right." <u>Id.</u> (quoting <u>Cornell</u>, 17 Cal. App. 5th at 803).

Plaintiff alleges a violation of a plainly applicable constitutional right under the Fourth Amendment. Furthermore, Defendants do not otherwise argue that Plaintiff failed to allege a specific intent. Defendants' motion to dismiss the Bane Act claim is denied.

## C.    _<u>Monell</u>_ **Liability**

Plaintiff's seventh cause of action alleges a violation of 42 U.S.C. § 1983 against the City. <u>See</u> Complaint ¶¶ 80-86. Government entities are subject to § 1983 suits where an "action pursuant to official municipal policy of some

nature caused a constitutional tort." <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S.
658, 691 (1978). To impose <u>Monell</u> liability, a plaintiff must establish that: "(1)
[Plaintiff] had a constitutional right of which he [or she] was deprived; (2) the
municipality had a policy; (3) the policy amounts to deliberate indifference to
[Plaintiff's] constitutional right; and (4) the policy is the moving force behind
the constitutional violation." <u>Gordon v. Cnty. of Orange</u>, 6 F.4th 961, 973 (9th
Cir. 2021) (citation omitted).

   Defendants argue that there can be no <u>Monell</u> liability without an
underlying constitutional violation. <u>See</u> MTD at 25. However, as discussed
above, Plaintiff has plausibly alleged a violation of the Fourth Amendment.
Defendants next argue that Plaintiff has failed to identify a custom or policy
that caused her injury. <u>See id.</u> at 25-27. Defendants contend that Plaintiff's
allegation that the City maintains a "widespread custom, policy, and practice .
. . of inadequately training police officers regarding domestic violence
response," Complaint ¶ 85, is conclusory. <u>See id.</u>

   A plaintiff can satisfy <u>Monell</u>'s policy requirement by alleging that: (1)
the municipality acted "pursuant to an expressly adopted official policy"; (2)
the municipality acted in accordance with a "longstanding practice or
custom"; or (3) "the individual who committed the constitutional tort was an
official with final policy-making authority or such an official ratified a
subordinate's unconstitutional decision or action and the basis for it." <u>Gordon</u>,
6 F.4th at 973-74 (internal quotation marks and citations omitted).

   Plaintiff appears to offer two theories of <u>Monell</u> liability. First, Plaintiff
alleges that the City acted pursuant to an official policy, which requires that
"someone" be arrested in domestic violence responses regardless of probable
cause or proper dominant aggressor analysis. <u>See</u> Complaint ¶¶ 34, 85. Second,
Plaintiff alleges that the City has a widespread custom, policy, and practice of
inadequately training police officers regarding domestic violence response. <u>See</u>

id. Plaintiff further alleges that since her detention, she has become aware of
two other woman who had been similarly misidentified as the dominant
aggressor and arrested by IPD officers. See id. ¶ 30. These allegations are
sufficient to state a Monell claim at this juncture. Defendants' motion to
dismiss the Monell claim is denied.

**D.    Intentional Infliction of Emotional Distress**

Plaintiff's second cause of action is for intentional infliction of emotional
distress ("IIED") against Fradella. See Complaint ¶¶ 49-54.

In California, IIED requires a showing of "(1) extreme and outrageous
conduct by the defendant with the intention of causing, or reckless disregard of
the probability of causing, emotional distress; (2) the plaintiff's suffering severe
or extreme emotional distress; and (3) actual and proximate causation of the
emotional distress by defendant's outrageous conduct." Sabow v. United
States, 93 F.3d 1445, 1454 (9th Cir. 1996) (citation omitted). "A defendant's
conduct is 'outrageous' when it is so extreme as to exceed all bounds of that
usually tolerated in a civilized community." Hughes v. Pair, 46 Cal. 4th 1035,
1050-51 (2009) (cleaned up and citation omitted).

Defendants argue that Plaintiff has not alleged sufficient facts to
demonstrate that Fradella's conduct was extreme or outrageous. See MTD at
16-17. Plaintiff disagrees, citing McDonald v. Cnty. of Sonoma, 506 F. Supp.
3d 969 (N.D. Cal. 2020). See Opp'n at 23-24. However, McDonald involved
an officer who allegedly knocked the plaintiff unconscious and broke several of
his teeth, actions far more extreme than those alleged in this case. See id. at
987 ("As a matter of law, 'extreme and outrageous conduct' includes the
unlawful arrest and use of excessive force against a suspect."); see also Warren
v. Marcus, 78 F. Supp. 3d 1228, 1250 (N.D. Cal. 2015) (denying summary
judgment on IIED claim where plaintiff was shot by officers); Jaramillo v. City
of San Mateo, 76 F. Supp. 3d 905, 926 (N.D. Cal. 2014) ("[I]f a jury believes

Jaramillo's claims about the officers' actions (i.e., purposefully kneeing
Jaramillo in the ribs while on the ground even though he never had his hands
in his pockets), the jury could reasonably find this to be extreme and
outrageous conduct."). Otherwise, Plaintiff's allegation that Defendants'
conduct "was outrageous and beyond the bounds of what is normally
acceptable" is conclusory. Plaintiff's IIED claim fails to state a claim upon
which relief can be granted; accordingly, Defendants' motion to dismiss the
IIED claim is granted.

**E.    Negligence**

Plaintiff's third cause of action is for negligence. See Complaint ¶¶ 55-61.
Plaintiff asserts direct negligence against all Defendants and vicarious liability
against the City. See id. Defendants argue that they are immune from liability.
See MTD at 17-18.

The California Tort Claims Act ("CTCA") provides the exclusive scope
of tort liability for government entities and employees. See Cal. Gov't Code
§ 810, et seq. "[I]n the absence of some constitutional requirement, public
entities may be liable only if a statute declares them to be liable." Cochran v.
Herzog Engraving Co., 155 Cal. App. 3d 405, 409 (1984) (emphasis in
original); see also Cal. Gov't Code § 815. Under the CTCA, a public employee
is generally "liable for injury caused by his act or omission to the same extent
as a private person." Cal. Gov't Code § 820(a). California Government Code
Section 815.212 "makes a public entity vicariously liable for its employee's
negligent acts or omissions within the scope of employment." Eastburn v.
Reg'l Fire Prot. Auth., 31 Cal. 4th 1175, 1180 (2003) (emphasis in original).
"Except as otherwise provided by statute, a public entity is not liable for an
injury resulting from an act or omission of an employee of the public entity
where the employee is immune from liability." Cal. Gov't Code § 815.2(b).

Negligence requires a showing of: "(1) a legal duty to use due care; (2) a breach of that duty; and (3) injury that was proximately caused by the breach." Knapps v. City of Oakland, 647 F. Supp. 2d 1129, 1164 (N.D. Cal. 2009) (citation omitted). Plaintiff plausibly alleges that Fradella acted negligently when he arrested her for violating California Penal Code § 273.5(a). Plaintiff further alleges that the City is vicariously liable for Fradella's conduct pursuant to California Government Code § 815.2. See Complaint ¶ 61. The City's immunity depends upon whether Fradella is immune. "Public employees are similarly not entitled to immunity in suits for false arrest or false imprisonment." Robinson v. Solano Cnty., 278 F.3d 1007, 1016 (9th Cir. 2002); see also Cal. Gov't Code § 820.4 ("Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment."). Accordingly, Fradella is not immune from suit under California law, and neither is the City. Defendants' motion to dismiss the negligence claim is denied.

## F.    Negligent Employment and Supervision

Plaintiff's fourth cause of action is for negligent employment and supervision. See Complaint ¶¶ 62-67. Defendants argue that this claim is barred as a matter of law. See MTD at 18-19.

Direct claims of negligence against a public entity "must be founded on a specific statute either declaring the entity to be liable or creating a specific duty of care apart from the general tort principles embodied in Civil Code section 1714[.]" de Villers v. Cnty. of San Diego, 156 Cal. App. 4th 238, 251 (2007) (emphasis in original). In de Villers, the court found "no relevant case law approving a claim for direct liability based on a public entity's allegedly negligent hiring and supervision practices." Id. at 252. Accordingly, Plaintiff's direct negligence claim based on employment and supervision fails. See Han v. City of Folsom, 551 F. App'x 923, 926 (9th Cir. 2014) (affirming grant of

summary judgment on state-law claim for negligent hiring, retaining, training, supervision, and discipline because "cities are not liable for such conduct under California law").

A public entity may be vicariously liable for negligent employment and supervision under § 815.2(a) by its employees as long as there is a "special relationship" that exists between the supervisors of the public entity and the plaintiff. See C.A. v. William S. Hart Union High Sch. Dist., 53 Cal. 4th 861, 865, 877 (2012). "Although California recognizes a special relationship between an arresting officer and arrestee, the plaintiff must allege whether the supervisors responsible for hiring, training, disciplining, and so forth had such a special relationship." Campos v. Cnty. of Orange, No. 23-0072, 2023 WL 3432144, at *4 (C.D. Cal. Mar. 8, 2023) (emphasis in original) (internal quotation marks and citation omitted) (dismissing vicariously liability claim against municipality in absence of allegations that sheriff had a "special relationship" with the plaintiff). Then, the court "must examine whether the employee who acted or failed to act would have been personally liable for the injury." de Villers, 156 Cal. App. 4th at 249 (citation omitted). Here, Plaintiff has not alleged sufficient facts to demonstrate that the City had a "special relationship" with her or that the City knew or had reason to know that Fradella's "unfitness or incompetence" created a risk to Plaintiff. See Complaint ¶ 65. Defendants' motion to dismiss the negligent employment and supervision claim is granted.

///

///

///

///

///

///

## IV.    CONCLUSION

Defendants' motion to dismiss is GRANTED in part. Plaintiff's causes of action for injunctive relief under California Code of Civil Procedure § 526a, malicious prosecution, IIED, and negligent employment and supervision are dismissed with leave to amend. Plaintiff shall have twenty-one (21) days from this Order to amend her complaint to cure the deficiencies discussed above.

Date:  October 31, 2025

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge